## Case No. 16,775.

### UNITED STATES v. WRIGHT.

[1 McLean, 509.][1]

Circuit Court, D. Ohio.　July Term, 1839.

Civil Officers of the U. S.—Right of Resignation—Release of Sureties—Trial—Instructions.

1. A civil officer has a right, at any time, to resign his office, and after his resignation has been received at the proper department, his surety is not bound for his faithful performance.

[Cited in Movius v. Lee, 30 Fed. 301. Cited, but not followed, in Edwards v. U. S., 103 U. S. 477.]

[Disapproved in State v. Clayton, 27 Kan. 445. Cited in Com. v. Hawkes, 123 Mass. 530; State v. Mayor, etc., of Lincoln, 4 Neb. 261. Disapproved in Coleman v. Sands, 12 Hans. (87 Va.) 697, 13 S. E. 150.]

2. If the resignation, in its terms, is not to take effect, until a successor shall be appointed, the effect may not be to relieve the surety.

3. The president has no power to refuse a resignation, and require the officer to continue in office.

[Cited in Reiter v. State, 51 Ohio St. 74, 36 N. E. 945.]

4. The instructions of the court must apply to the facts proved in the case.

[Cited in dissenting opinion in McCornick v. Sadler, 10 Utah, 210, 37 Pac. 334.]

5. If they have no such application, and could have had no influence on the verdict, they af-

[1] [Reported by Hon. John McLean, Circuit Justice.]

ford no ground for a reversal of the judgment, however erroneous they may be.

[Cited in Hamer v. First Nat. Bank, 9 Utah, 215, 33 Pac. 943.]

[In error to the district court of the United States for the district of Ohio.]

The district attorney appeared on the part of the plaintiffs, and the defendant [John C. Wright,] appeared in his proper person.

McLEAN, Circuit Justice. This case was originally commenced in the district court, and on the trial certain exceptions were taken to the rulings of the court, and on which the cause was brought before the circuit court by a writ of error. The action was brought on a penal bond for $18,000 given by J. P. Fogg, a collector of internal revenue, and signed by the defendant, as security. The declaration stated the bond which was dated 20th January, 1820, without setting out the condition. Defendant craved oyer of the condition, and pleaded—

I. Nil debet with the following notice of special matter in bar: (1) That Fogg faithfully collected and paid over all taxes and duties. (2) That defendant believing Fogg would not discharge his duty, notified the proper department in writing, and sent Fogg's written resignation, which was received 2d August, 1817; yet he was continued in office long afterwards, when wholly insolvent, and if there was any breach it was subsequent to his resignation. (3) That Fogg and sureties have paid all balances in full. The defendant also pleaded specially that Fogg went into office 20th January, 1817, and did his duty till 25th July, ensuing, when he resigned in writing, and that he did his duty up to the time his resignation was received.

II. That Fogg while in office collected all and paid over, &c.

The plaintiffs took issue on the plea of nil debet; demurred to the second plea because it contained no averment that the resignation was accepted by competent authority. The defendant joined in demurrer.

And in answer to the third plea the plaintiffs replied that Fogg, between January and December, 1817, received $10,000 in bonds which he did not collect or account for. That he did not collect or account for $10,000 due United States; that he received various sums in money, in bonds, and stamped paper which he did not account for.

The defendant joined issue in fact on all the above breaches. The second plea was abandoned, and a jury was sworn to try the issues in fact. The verdict found that the instrument declared on was the deed of the defendant; and that Fogg was not guilty of any of the breaches set forth in the plaintiffs' replication to the defendant's third plea.

The bill of exception states that the defendant to maintain the issue on his part, relating to Fogg's resignation and accept-

ance, gave in evidence Fogg's resignation dated 25th July, 1817, which was received by the commissioner of the revenue the 2nd August ensuing. And also defendant's letter to the commissioner of the same date requesting him to take steps to keep safely the books and other property, in the hands of the collector. That the funds or property of the government were not safe in his hands. And also the letter of the commissioner acknowledging the receipt of the resignation of Fogg and the letter to the defendant stating the absence of the president and requesting the collector to discharge his duties until his successor should be appointed. And there being no other evidence the court charged the jury that Fogg's resignation took effect 2nd August, and that defendant was not liable, as surety, after that time, to which the district attorney excepted.

Two errors are assigned on which a reversal of the judgment of the district court is prayed. First—That the charge of the district judge was erroneous, and secondly, the general error.

On the part of the defendant it is contended that the charge was right on the case made. That the office was a civil one, was resigned absolutely and the resignation was received by the proper officer. But that if the charge was erroneous, it was not injurious to the plaintiffs. There are three modes by which a civil office is terminated. First, its own limitation; secondly, removal by the executive or by impeachment; and thirdly, a resignation. The collector of internal taxes was appointed for years, but the limitation had not expired when the defalcation of Fogg is alleged to have occurred. I have always considered the construction of the constitution, which was given in the first administration in regard to the power of the president to remove from office, without the consent of the senate, as wrong in principle and injurious in practice. The senate constitutes a part of the appointing power, and was intended to be a check upon the executive. But, if the president may remove from office without consulting the senate, it is no effectual check. The power to remove is implied from the power to appoint; and, strange as it may seem, this implication is drawn in favor of the exercise of the power by the executive, to the exclusion of the senate. This is not only illogical, but it is against the spirit of the constitution. The attempt by some to find the power of the president to remove under that clause of the constitution, which requires him to see that the laws are faithfully executed, cannot be sustained. This clause refers to the exercise of that power in the president, to call out the physical force of the country, to carry into effect the laws. His ordinary executive duties are pointed out and required to be performed, in other parts of the constitution. There can be no doubt that a civil officer has a right to resign his office at pleasure, and it is not in the power of the executive to compel him to remain in office. It is only necessary that the resignation should be received, to take effect, and this does not depend upon the acceptance or rejection of the resignation by the president. And if Fogg had resigned absolutely and unconditionally, I should have no doubt that the defendant could not be held bound, subsequently, as his surety. But it appears from his letter, which is made a part of the record, that although he resigned his office, he professed a willingness to continue in the office until his successor could be appointed. And the commissioner informed the surety, in answer to the letter, that the president was absent from the seat of government, and that the collector would be continued in office until the president should return, and a successor should be appointed; and the defendant was requested to apprize the commissioner, if such an arrangement would be injudicious. But it does not appear that he was advised on the subject. The collector, it was proved, as appears from the bill of exceptions, continued in the office from the time of his resignation, on the 2d of August, 1817, until the 12th of December following. The resignation was to take effect, by the terms of it, when a successor should be appointed. It may therefore be doubted whether the surety was not bound, so long as the collector remained in office. The resignation was qualified with the expression of a willingness to hold the office until a new appointment should have been made, in the same letter.

The bill of exceptions, after stating that the defendant, to prove the resignation of Fogg, gave in evidence the letters above referred to, states that "the plaintiffs on their part having proved that the said Fogg had continued in the full performance of the duties of said office from and after the 2nd day of August, 1817, and until the 1st December, 1817; and the said defendant having given no other or further proof in relation to that part of the defence, and the testimony being closed, the defendant moved the court among other things to instruct the jury that the said Fogg had resigned his said office, and that the said resignation took effect and became complete on the said 2nd of August, 1817; and that the defendant was not liable as his surety for any delinquency of said Fogg which occurred after that time; which instruction the court gave."

It does not appear from the bill of exceptions nor from any part of the record, that the plaintiffs offered any evidence of the breaches alleged in their replication to the third plea, on which issues were joined. The third plea was, that Fogg while in office collected and paid over, &c. To this the plaintiffs replied various breaches on which issues were joined. And to support these breaches, it does not appear that the

plaintiffs offered any evidence. And the question arises whether, if the instruction given as to the resignation was erroneous, the judgment on that ground should be reversed. If there was no evidence given or offered to show the breaches alleged in any one of them, it is very clear, that the verdict must have been for the defendant, had the instruction not been given. Without proof of damages the plaintiffs could not ask a verdict; and any instructions given, however erroneous, which had no application to the facts of the case, and could have had no influence on the verdict, can afford no ground for a reversal of the judgment.

The judgment of the district court is affirmed.