## EDWARDS v. UNITED STATES.

1. The common-law rule is in force in Michigan, that the resignation of a public officer is not complete until the proper authority accepts it, or does something tantamount thereto, such as to appoint a successor.
2. After making a return to the alternative *mandamus* sued out against him by a judgment creditor of a township, the township supervisor cannot set up the non-service of any notice in the cause.

ERROR to the Circuit Court of the United States for the Western District of Michigan.

The facts are stated in the opinion of the court.

*Mr. H. F. Severens* for the plaintiff in error.

*Mr. John W. Stone* and *Mr. M. J. Smiley, contra.*

MR. JUSTICE BRADLEY delivered the opinion of the court.

William F. Thompson, on the fifth day of September, 1874, recovered a judgment in the court below against the township of St. Joseph, in the county of Berrien, Michigan, for the sum of $17,327.86 besides costs.

By the laws of Michigan an execution cannot be issued against a township upon a judgment, but it is to be " levied and collected as other township charges; " and when collected to " be paid by the township treasurer to the person to whom the same shall have been adjudged." Comp. Laws of 1871, sect. 6630. The mode of raising money by taxation in townships is prescribed in sects. 992 and 997, which make it the duty of the township clerk, on or before the first day of October of each year, to make and deliver to the supervisor of the township a certified copy of all statements on file, or of record, in his office, of moneys proposed to be raised therein by taxation for all purposes; and it is made the duty of the supervisor, on or before the second Monday of said month, to deliver such statements to the clerk of the board of supervisors of the county, to be laid by him before the board at its annual meeting. At this meeting the board is required to direct the several amounts to be raised by any township, which appear by the certified statements to be authorized by law, to be spread upon the assessment roll of the proper township, together with its due

proportion of the county and State taxes. The whole is then certified and delivered by the clerk of the board to the town supervisor whose duty it is to make the individual assessment to the various taxpayers of the township in proportion to the estimate and valuation of their property. The assessment roll is then delivered to the town treasurer for collection.

The judgment in the present case not being paid, and the township officers having refused to take any steps to levy the requisite tax for the purpose, the United States, on the relation of Thompson, on the 11th of October, 1876, filed a petition for a *mandamus* against Edward M. Edwards, supervisor of the township of St. Joseph, in which he set forth the judgment, and alleged that, on the 26th of September, 1876, he caused a certified transcript of the judgment to be served on the township clerk, with proper notice and demand; and on the 27th of September, 1876, he caused a similar transcript, notice, and demand to be served on Edwards, the supervisor. The petition further alleged that these officers refused to do anything in the premises, the clerk pretending to have resigned his office. An alternative *mandamus* was issued commanding Edwards, as supervisor of the township, forthwith to deliver to the clerk of the board of supervisors of the county a statement of the claim of relator under and by virtue of the judgment.

Edwards duly filed a return, stating that he was not supervisor, and had no authority to perform the acts required of him; that at the general election of April 3, 1876, he was duly elected supervisor, and qualified and entered upon his office, and continued in office until the 7th of June, 1876, when he resigned; that his resignation was in writing as follows: —

"To the township board of the township of St. Joseph, county of Berrien, State of Michigan: I hereby tender my resignation of the office of supervisor of this township. St. Joseph, June 7, 1876.
                    (Signed)          " EDWARD M. EDWARDS."

That this written resignation was delivered to and filed by the township clerk on the same day; that since then he, Edwards, had not been supervisor, nor had he acted as such, or had charge of the records or papers of the office. He further

stated in his return that the township clerk had never delivered to him any certified copy of any statement of the moneys to be raised by taxation, either for the purpose of paying the claim of the relator, or for any other purpose.

To this return the relator demurred. The demurrer was sustained, and a peremptory *mandamus* awarded. Edwards sued out this writ of error.

If we could take notice of the affidavits annexed to the petition for *mandamus*, we should not have much difficulty in drawing the conclusion that the pretended resignations of the clerk and supervisor were either simulated or made for the purpose of evading compulsory performance of their duties. But the return being demurred to must be taken as true, and the affidavits cannot be considered. The only question to decide, therefore, is whether the facts set forth in the return exhibit a good and sufficient answer to the alternative writ; whether, in other words, they show such a completed resignation on the part of Edwards as amounts to a deposition of his office of supervisor of the township. This is the issue made by the parties, and it is an issue of law. The plaintiff in error insists that, having done all that he could do to discharge himself from the office, by filing a written resignation with the township clerk, his resignation was complete. The defendant in error insists that a resignation is not complete until it is accepted by the proper authority. The question then is narrowed down to this: was the resignation complete without an acceptance of it, or something tantamount thereto, such as the appointment of a successor?

As civil officers are appointed for the purpose of exercising the functions and carrying on the operations of government, and maintaining public order, a political organization would seem to be imperfect which should allow the depositaries of its power to throw off their responsibilities at their own pleasure. This certainly was not the doctrine of the common law. In England a person elected to a municipal office was obliged to accept it and perform its duties, and he subjected himself to a penalty by refusal. An office was regarded as a burden which the appointee was bound, in the interest of the community and of good government, to bear. And from this it followed of course

that, after an office was conferred and assumed, it could not be laid down without the consent of the appointing power. This was required in order that the public interests might suffer no inconvenience for the want of public servants to execute the laws. See 1 Kyd, Corporations, c. 3, sect. 4; Willcock, Corporations, pp. 129, 238, 239; Grant, Corporations, pp. 221, 223, 268; 1 Dillon, Mun. Corp., sect. 163; *Rex* v. *Bcwer,* 1 Barn. & Cres. 585; *Rex* v. *Burder,* 4 T. R. 778; *Rex* v. *Lone,* 2 Stra. 920; *Rex* v. *Jones,* id. 1146; *Hoke* v. *Henderson,* 4 Dev. (N. C.) L. 1; *Van Orsdall* v. *Hazard,* 3 Hill (N. Y.), 243; *State* v. *Ferguson,* 31 N. J. L. 107. This acceptance may be manifested either by a formal declaration, or by the appointment of a successor. "To complete a resignation," says Mr. Willcock, "it is necessary that the corporation manifest their acceptance of the offer to resign, which may be done by an entry in the public books, or electing another person to fill the place, treating it as vacant." Willcock, Corporations, 239.

In this country, where offices of honor and emolument are commonly more eagerly sought after than shunned, a contrary doctrine with regard to such offices, and, in some States, with regard to offices in general, may have obtained; but we must assume that the common-law rule prevails unless the contrary be shown. In Michigan we do not find that any contrary rule has been adopted; on the contrary, the common-law rule seems to be confirmed by the statutes of the State, so far as their intent can be gathered from their specific provisions. By sect. 690 of the Compiled Laws of 1871, if any person elected to a township office (except that of justice), of whom an oath is required, and who is not exempt by law, shall not qualify within ten days, he is subjected to a penalty of ten dollars. By sects. 691, 693, resignations of officers elected at township meetings must be in writing, addressed to the township board, who is authorized to make temporary appointments to fill vacancies. The township board is composed of the supervisor, the two justices of the peace whose term of office will soonest expire, and the township clerk, any three of whom constitute a quorum. Sect. 706. Resignations of other officers are directed to be made generally to the officer or officers who appointed them,

or who may be authorized by law to order a special election to fill the vacancy.  Sect. 615.  These provisions indicate a general intention in conformity with the principles of the common law.  They make the acceptance of a township office a duty, and they direct resignations of office generally to be made to those officers who are empowered either to fill the vacancy themselves, or to call an immediate election for that purpose, — the controlling object being to provide against the public detriment which would ensue from the continued or prolonged vacancy of a public office.  The same intention is manifested by sect. 649, which prescribes the term of office of township officers as follows : " Each of the officers elected at such meetings [that is, the annual meetings of the township], except justices, commissioners of highways, and school inspectors, shall hold his office for one year, *and until his successor shall be elected and duly qualified.*"  Here is manifested the same desire to prevent a hiatus in the offices.  There is nothing in the spirit of this legislation to indicate that the common-law rule is discarded in Michigan.

Sect. 617 of the Compiled Laws declares that " every office shall become vacant on the happening of either of the following events before the expiration of the term of such office : " First, the death of the incumbent ; second, his resignation ; third, his removal from office, " &c.  But it is nowhere declared when a resignation shall become complete.  This is left to be determined upon general principles.  And in view of the manifest spirit and intent of the laws above cited, it seems to us apparent that the common-law requirement — namely, that a resignation must be accepted before it can be regarded as complete — was not intended to be abrogated.  To hold it to be abrogated would enable every office-holder to throw off his official character at will, and leave the community unprotected.  We do not think that this was the intent of the law.

The plaintiff in error has referred us to several authorities to show that in this country the doctrine that a resignation to be complete must be accepted, does not prevail.  But whilst this seems to be the rule in some States it is not the case in all.  In many States the common-law rule continues to prevail.  In *Hoke* v. *Henderson, supra,* decided in 1832, Mr. Chief Justice Ruffin,

speaking for the Supreme Court of North Carolina, said : " An officer may certainly resign ; but without acceptance his resignation is nothing, and he remains in office. It is not true that an office is held at the will of either party. It is held at the will of both. Generally resignations are accepted ; and that has been so much a matter of course with respect to lucrative offices, as to have grown into a common notion that to resign is a matter of right. But it is otherwise. The public has a right to the services of all the citizens, and may demand them in all civil departments as well as in the military. Hence there are on our statute book several acts to compel men to serve in offices. Every man is obliged, upon a general principle, after entering upon his office, to discharge the duties of it while he continues in office, and he cannot lay it down until the public, or those to whom the authority is confided, are satisfied that the office is in a proper state to be left, and the officer discharged." p. 29. Similar views were expressed by Mr. Justice Cowen in 1842, in *Van Orsdall* v. *Hazard, supra ;* and many common-law authorities on the subject were referred to. The Supreme Court of New Jersey maintained the same doctrine in 1864 in an able opinion delivered by the present learned Chief Justice, in the case of *State* v. *Ferguson, supra.* Speaking of the officer in question (an overseer of highways), the Chief Justice said : " If he possess this power to resign at pleasure, it would seem to follow, as an inevitable consequence, that he cannot be compelled to accept the office. But the books seem to furnish no warrant for this doctrine. To refuse an office in a public corporation connected with local jurisdiction was a common-law offence, and punishable by indictment." After reviewing the authorities cited to the contrary, particularly that in 1 McLean, 509, the Chief Justice concludes : " I do not think any of the other cases relied upon on the argument sustain in the least degree the doctrine, but on the contrary they all imply that the resignation, to be effectual, must be accepted."

In *Gates* v. *Delaware County* (12 Iowa, 405), referred to and much relied on by the plaintiff in error, whilst the court asserts that acceptance is not necessary, it nevertheless finds that there was, in fact, an acceptance in that case. The county judge, to whom the superintendent of schools addressed his resignation,

indorsed it " Resignation," and filed it in his office of the date specified; which act, under the circumstances, was considered by the court an acceptance. This case, therefore, cannot be regarded as definitively settling the doctrine even in Iowa.

Much reliance is also placed on the decision of Mr. Justice McLean in the Circuit Court in *United States* v. *Wright* (1 McLean, 509), where Wright was sued as surety on a collector's bond for delinquency committed by the collector after he had sent his resignation to the President, but before it was accepted. Mr. Justice McLean held that the resignation was complete when received and that the defendant was not liable. In announcing his decision he used this broad language: " There can be no doubt that a civil officer has a right to resign his office at pleasure, and it is not in the power of the Executive to compel him to remain in office." Mr. Chief Justice Beasley, of New Jersey, in commenting upon this language in *State* v. *Ferguson*, already cited, justly observes: " It is hardly to be supposed that it was the intention of the judge to apply this remark to the class of officers who are elected by the people and whose services are absolutely necessary to carry on local government; or that it was the purpose to brush away with a breath the doctrine of the common law, deeply rooted in public policy upon the subject. However true the proposition may be as applied to the facts then before the Circuit Court, it is clearly inconsistent with all previous decisions, if extended over the class of officers where responsibility is the subject of consideration."

But conceding that the law in some of the States is as contended for by the plaintiff in error, — and he cites cases to this purpose decided in Alabama, Indiana, California, and Nevada, — and conceding that Mr. Justice McLean's decision may have been correct in the particular case before him, the question is, what is the law of Michigan? and we think it has been shown that the common-law rule is in force in that State.

Now, in the present case, it is true that the defendant in his return avers that he resigned his office on the 7th of June, 1876. But he does not stop here. He goes on to show precisely what he did do. His whole return on this branch of the subject is as follows: —

"That, at the general election of April 3, 1876, this respondent was duly elected the supervisor of said township of St. Joseph, and on April 8, 1876, respondent qualified and entered upon his office as such supervisor. That respondent continued in said office of supervisor until the seventh day of June, 1876, when this respondent resigned his office as such supervisor. That such resignation was in writing, of which the following is a true copy : —

"'To the township board of the township of St. Joseph, county of Berrien, and State of Michigan : I hereby tender my resignation of the office of supervisor of this township. St. Joseph, June 7, 1876.          "'EDWARD M. EDWARDS.'

"That said writing, of which the above is a copy, was signed by this respondent, and after being so signed was by respondent delivered to and filed by the township clerk of said township of St. Joseph, and that said writing was so delivered to and filed by said township clerk on the seventh day of June, 1876. That since said seventh day of June, 1876, this respondent has not been the supervisor of said township of St. Joseph. That he has not acted or assumed to act as such supervisor in any particular. That respondent has not, since said June 7, 1876, had charge of any of the records or papers of said office of supervisor."

It does not appear that the resignation was ever acted upon by the township board, or that it was ever presented to or seen by them, or that the board was ever convened after the resignation was filed. According to the common-law rule, the resignation would not be complete, so as to take effect in vacating the office, until it was presented to the township board, and either accepted by them or acted upon by making a new appointment. A new appointment would probably be necessary in this case, because the township board was not the original appointing power. The supervisor is not their officer, representative, or appointee. They only represent the township in exercising the power, vested in them, of filling a vacancy when it occurs. This makes them the proper body to receive the resignation, because they are the functionaries whose duty it is to act upon it.

We think, therefore, that the return made to the alternative *mandamus* did not sufficiently show that the defendant had ceased to be supervisor of the township.

Other excuses for not obeying the *mandamus* are propounded in the return, as follows: —

" Respondent further says that he has never had served upon him in the cause in which said alternative writ issued, any process, notice, or paper of any kind, except said alternative writ.

" And respondent further shows that the township clerk of said township of St. Joseph has never made and delivered to respondent any certified copy of any statement on file or of record in his office of the moneys to be raised by taxation, either for the purpose of paying the alleged claim of the relator or for any other purpose, and no statement whatever of the clerk of said township with reference to the amount of money to be raised for township purposes has ever been delivered to respondent."

The plea of non-service of any other notice than the writ is inadmissible. The appearance of the defendant and the actual making of the return are a sufficient answer to it. Non-service may be good ground for a motion to set aside proceedings based on supposed service, but is not a good return to the writ.

The excuse that the clerk did not deliver to the defendant a certified statement is evasive. Why did he not do so? Was there collusion between them as stated in the petition for *mandamus?* The defendant does not state that the clerk refused to deliver him a statement; nor that he, the defendant, applied to the clerk for one. His own act, in repudiating his office, might well have prevented the clerk from delivering a statement to him. It is to be presumed that, on reassuming his duties, the clerk will recognize his official character and furnish the requisite statement. But if the clerk should refuse, it would still be the defendant's duty as supervisor to see that the claim of the relator, which is a fixed and indisputable liability of the township, and has been duly presented, is placed before the board of supervisors, and put in the way of payment by means of taxation.

We think the return was insufficient, and the demurrer was well taken.

*Judgment affirmed.*