# STATE *v.* CHADWICK, ET. AL.

PUBLIC OFFICER—FAITHFUL DISCHARGE OF DUTY.—An official bond bound a public officer to a "faithful" discharge of his official duty ; *Held,* That the condition was performed when the officer discharged his duty honestly and diligently with such skill as he actually possessed.

APPEAL from Marion County.

This action was brought by the state against Chadwick

and his bondsmen, to recover damages in the sum of $10,-000, because the said Chadwick did not comply with the conditions of his bond in negligently and unfaithfully discharging the duties of the office of secretary of state, from September 14, 1874, to September 9, 1878.

The complaint alleges that at the regular June election of 1874 the appellant, S. F. Chadwick, was duly elected secretary of state of said state of Oregon. That afterwards, to-wit: On the 1st day of July, A. D. 1874, said defendant. S. F. Chadwick, as principal, and the defendants, Aaron Rose, Asher Marks and B. P. Smith, as sureties, duly executed a bond under their hands and seals to the state of Oregon, in the sum of $10,000, conditioned that if said defendant, S. F. Chadwick, should faithfully discharge the duties of his office as secretary of the state of Oregon, and also as auditor, and deliver over to his successor in office, or to any other person authorized by law to receive the same, all moneys, books, records, and all papers pertaining to the said office, then the obligation in said bond contained, on the part of said defendants, was to be void, otherwise to remain in full force. That afterwards, on the 14th day of September, 1874, said S. F. Chadwick duly entered upon the duties of his said office, and continued so to act by virtue of said election, until the 9th day of September, 1878. That during said time, and while said S. F. Chadwick was acting as secretary of state and auditor, he, the said S. F. Chadwick, did not faithfully discharge his duties as secretary of state and auditor, in this: That said S. F. Chadwick, as secretary and auditor aforesaid, at divers times between the said 14th day of September, 1874, and the said 9th day of September, 1878, did wrongfully, unlawfully, negligently and wilfully audit and allow to divers persons, for services specified, large amounts in addition to and in excess of the compensation

actually and lawfully due such parties, for such services. Judgment is demanded for $10,000 and costs.

The appellant Chadwick, in his answer denies every material allegation in the complaint, and asks for judgment for costs.

The case was referred to Hon. M. P. Deady to take the testimony, and report his findings of fact and conclusions of law. The case was tried before him and he reported that the state was entitled to the relief asked for in the complaint. The report, which was confirmed by the circuit court, may be found in the appendix to this volume.

*R. Williams and S. F. Chadwick,* for appellants.

*Addison C. Gibbs and W. G. Piper,* for respondent.

Heard before WATSON, C. J., and WALDO, J.

WALDO, J.:

This is an action brought for a breach of the official bond of the appellant Chadwick, as secretary of state, conditioned to be void should he "faithfully discharge the duties of his office as secretary of state and also as auditor."

In *Union Bank* v. *Clossey,* 10 John., 271, it was held that a condition in the bond of the teller of a bank, faithfully to discharge the duties of his trust, applied to his honesty, but not to his competency. This case was cited as authority in *United States Bank* v. *Brent,* 2 Cr. C. C., 696; see, also, *Alexandria* v. *Corse,* 2 Cr. C. C., 263; *United States Bank* v. *Stearns,* 15 Wen., 316.

On the other hand, in *American Bank* v. *Adams,* 12 Pick., 316, it was held that a bond given by the teller of a bank, conditioned faithfully to discharge his duties, bound him to responsibility for reasonable and competent skill, as well as for honesty and diligence in the performance of his

duties. (Ang. & Ames on Cor., section 319; *Hoboken* v. *Evans*, 3 Vr., 342.) A more stringent rule of responsibility is held to apply to a receiver and disburser of public money. (*Boyden* v. *United States*, 13 Wall., 17; *United States* v. *Thomas*, 15 Wall., 337.)

The rule of interpretation seems to be that when a public officer gives a bond conditioned faithfully to discharge his official duties, the word "faithfully" is held to imply that he has assumed that measure of responsibility laid on him by law had no bond been given. That the object of a bond so conditioned is to get sureties for the performance of the duties of the office according to law, and that everything is unfaithfulness which the law does not excuse.

The rule laid down in *Union Bank* v. *Clossey*, 10 John., 271, above, S. C., 11 John., 182, however questionable in a case like that in which it was applied, seems to be the true rule in the case of a bond of a public officer, like conditioned. Public employment does not, like private employment, rest on contract. In the case of the *American Bank* v. *Adams*, 12 Pick., and *Minor* v. *Merchants Bank*, 1 Pet., 46, the bond was given by one private person to another, to secure the performance of a contract, which included in its implied terms that measure of responsibility covered by the bond. In the case of the appellant Chadwick, the bond is security against default in the performance of a public duty, which was not undertaken by appellant by virtue of any contract, express or implied, between him and the state. (*Wyandotte* v. *Drennan*, 46 Mich., 480; *Parker* v. *Pilsbury*, 4 Post, 51; *Gilbert* v. *Commissioners*, 8 Blackf., 81; *Riggs* v. *The State*, 26 Miss., 51; *County Commissioners* v. *Jones*, 18 Minn., 200; Cooley Con. Lim., 276.)

In *United States* v. *Wright*, 1 McLean, 509; *Gates* v. *Delaware County*, 12 Iowa, 406, and *State* v. *Clark*, 3

Nev., it is declared that an office may be resigned at any time. But in *State* v. *Ferguson*, 2 Vroom, 107, it is shown from the books that such is not the common law. S. P., *Hoke* v. *Henderson*, 4 Dev., 1; S. C., 25 Am. Dec., 699, 700.

At common law " an office was regarded as a burden which the appointee was bound, in the interest of the community and of good government, to bear." (*Edwards* v. *The United States*, 103 U. S., 473, Bradley, J., who cites and approves *State* v. *Ferguson*.) It follows that no citizen can of right decline public office. The state has the same right to summon him to civil as to military service, and in civil office, the same right to the service of the judge on the bench as of the juror in the box. The state may demand that a public officer shall execute a bond with sureties conditioned for the faithful performance of his official duties. This does not show that the state has now undertaken to deal with the officer on terms of contract in his official relations with the state. This action of the state goes no further than to make the loss of office a motive for executing the bond. It but makes use of an existing power to secure an additional remedy for unfaithfulness in office. The nature of the official relation is not affected thereby. The bond must still be held entirely voluntary. It is a collateral contract to perform the duties of the office according to its conditions, which, when voluntary and not *ultra vires*, is binding—the only sound legal reason for which would seem to be that it is a specialty. (Met. on Con., 2, and note e.) But for this, the bond should be void for want of consideration. The giving of the office, aside from its emoluments, cannot be held to be a consideration. This would be contrary to the nature of an office. That the officer shall be '

permitted to take the emoluments of the office, can hardly be deemed a consideration, without implying a contract in relation thereto, whereas it is held that the emoluments lie wholly at the will of the state.

These principles determine the liability of the appellant for a default in the performance of his official duties. The bond in this case is a contract to perform in that measure the appellant would have been obliged to perform had no bond been given. It lays no additional liability on the appellant. Where an action would lie against him for a breach of the conditions of this particular bond, case by the public corporation would lie at common law. (*Franklin Ins. Co.* v. *Jenkins*, 3 Wen., 130; *Smith* v. *Hurd*, 12 Met., 384; Ang. & Ames on Cor., sec. 312; *United States* v. *Maurice*, 2 Brock, 96.) The law presumes, generally, that every one may be honest and diligent, but not that he is skilled in any particular art. Hence, since the appellant in the transaction of his appointment is not a party to a contract, the principles applicable in the case of a contracting party cannot apply to him. He executes a duty imposed by the public, and it would seem, therefore, that he should be held liable for that degree of skill only which he possesses. He who derives the advantage should bear the burden.

The learned referee found, first, that $558 90 principal, and $5 30 interest on said sum, of the claim of E. D. Foudray for reclaiming a fugitive from justice from Salt Lake City, Utah, was false and illegal, and as a conclusion that the appellant broke the condition of his bond when he audited such part of said claim and drew his warrant therefor. The learned referee took the ground that section 13 of the act of October 24, 1864, Gen. Laws, 1874, 605, governed the case. He also suggested that if that section did not govern, that then, under section 489, p. 403, Foudray could

be allowed only actual expenses.　But section 13 of the act of 1864, beginning "All private persons performing services required by law, or in the execution of legal process," seems to refer to services undertaken by private parties within the state, in the stead of public officers—who may be required by law to perform the services.　No person can be required, in the absence of express legislation, to go outside of the state in a civil capacity.　(1 Bl. Com., 137.)　In every case such a service must be undertaken on contract; and to fix rigidly, by law, the compensation to be allowed, were likely to cripple the executive arm.　The executive should have power, according to the exigencies of the case, to offer compensation to an agent for the arrest of a fugitive.　Under the rule that where a power is given by statute, everything essential for making it effectual, is given by implication, such construction may be put on secs. 487 and 489.　If, however, the construction put on the statute was correct, there is one consideration decisive in favor of the appellant on the appeal—the findings of fact do not show how the misconstruction occurred.　For aught that appears, it was the result of a mere error of judgment, and the appellant cannot be held liable for such an error.　(*Kendall* v. *Stokes*, 3 How., 98–99; *Wilkes* v. *Dinsman*, 7 How., 131; *Alvard* v. *Barrett*, 16 Wis., 177; 16 Opin. Att'y Gen., 318.)

In *Drewe* v. *Coulton*, 1 East., 563, which was an action against the defendant as returning officer, for refusing the plaintiff's vote, Wilson, J., says: "In very few cases is an officer answerable for what he does to the best of his judgment in cases where he was compelled to act." "And in my opinion it cannot be said because an officer is mistaken in point of law, this action will lie against him." *Jenkins* v. *Waldron*, 11 John., 114, is to the same effect.

The question is, want of due care aside, did the appellant

act wilfully, that is, as explained in *Drewe* v. *Coulton,* "against his own conviction." Whether the appellant acted in good faith or not, is a point in issue between the appellant and the state, which must be determined by the jury.

It was also found that the appellant audited and allowed the claim of James Shinn, for the transportation of prisoners, for $166 in excess of what Shinn was entitled to by law, which said charge was false and illegal. The statute established the rule for computing the compensation to which Shinn was entitled. The fact that an excessive charge was allowed, was not legally made out, but, in any event, it is not found that the appellant acted wilfully or negligently, essential to charge him. The addition of $33\frac{1}{3}$ per cent. to the fees of sheriffs, as elsewhere allowed by law, made to the fees of sheriffs east of the Cascade mountains, by the act of October 21, 1864, Gen. Laws, 1874, 741, applied on its face to criminal as well as to civil cases.

The appellant is also charged with the sum of $9 00 *per diem,* and $6 27 interest, on the claim of W. H. Watkinds, superintendent of the state penitentiary, for conveying convicts from the penitentiary to the insane asylum at Portland. The objection to this claim was, that W. H. Watkinds, a salaried officer of the state, was not entitled to a *per diem* for such services, and that interest could not be charged against the state without stipulation. But this was not a claim for the performance of official duty. It was no part of the superintendent's official duty to take convicts to the insane asylum. In rendering such service he acted as a private person, and was entitled to be paid as such. It is another matter if he thereby neglected his official duties.

The case of the *People* v. *Canal Commissioners,* 5 Den., 501, is a direct authority for the allowance of interest.

(See, also, 1 Opin. Att'y Gen., 71; *Risley* v. *Andrew County*, 46 Mo., 383; *Shipman* v. *The State*, 44 Wis., 458.)

The appellant was further charged with $1,116 75, found to have been illegally audited and allowed by him for clerical aid. The act of October 22, 1872, providing that his allowance for clerical aid should be $1,000 per annum, repealed (and it was so found by the learned referee,) the act of October 26, 1870. (*Burbank* v. *Crouch*, 10 Cal., 315; *Stingle* v. *Nevil*, 9 Or., 62.) It seems clear, however, that the misconstruction of the act of 1872 was not so clearly an error that the appellant could be charged, on the face of the act, without extrinsic evidence. The finding is merely of illegal auditing and allowing, which is insufficient.

The further sum of $1,400 was audited and allowed T. H. Cann as assistant secretary of state, while it was found that Cann was not such assistant in fact, and performed no services as such. The appellant is therefore charged with this sum. The compensation of the secretary of state is fixed by the constitution, and cannot be increased by any subterfuge whatever. (*Rooney* v. *Milwaukie County*, 4 Wis., 23.) But here, again, the same objection lies to the findings of fact.

The principles here laid down govern all the other issues joined, as also the findings of fact thereon. It follows that the judgment must be reversed and the cause remanded for a new trial, and it is so ordered.

Judgment reversed.

WATSON, C. J.:

I fully concur in the final conclusion reached by my associate, and in the views expressed in the opinion as to the requirement of skill in public office, in their application to this case. Where an executive officer is charged with the

exercise of functions judicial in their nature, he is responsible only for proper attention and good faith. The complaint in this case charges the appellant Chadwick with having, while secretary of state, audited and allowed certain fictitious and fraudulent claims against the state, knowing them to be such, which, by means of official warrants drawn by him, were paid out of the state treasury. This knowledge on his part is denied, and the findings of fact on which the judgment appealed from rests, do not in any manner impugn his attentiveness and good faith. If he was in fault in either of these respects, it should have been so found in express terms, and in the absence of such finding the judgment cannot stand.