THE STATE OF MISSOURI at the Relation of ROBERT F. SANDERS, Relator, v. JAMES B. BLAKEMORE, Respondent.

St. Louis Court of Appeals, April 1 and April 3, 1890.

1. Circuit Clerks: RIGHT TO RESIGN WHILE SUSPENDED FROM OFFICE. The suspension of a clerk of the circuit court from office, pursuant to an order of the circuit judge, does not disable such clerk from resigning his office or abate his right to resign.

2. ———— : AUTHORITY OF GOVERNOR TO FILL VACANCY. Such resignation causes a vacancy in the clerkship which the governor has the right to fill by appointment, notwithstanding that the circuit court has previously appointed a temporary clerk, who holds the office at the time of the appointment by the governor.

3. **Appeal :** FROM THIS COURT TO SUPREME COURT. *Held* ( THOMPSON, J., *dissenting* ) that an appeal does not lie from this court to the supreme court in an action wherein this court exercises original jurisdiction, notwithstanding that the determination of the cause involves a constitutional question.

*Original Proceeding by Writ of Quo Warranto.*

JUDGMENT OF OUSTER.

*Hough & Hough*, for the relator.

It is said that Bragg had nothing to resign, because a temporary clerk had been appointed, who was in possession of the office. Bragg's death, after his suspension, would undoubtedly have created a vacancy in the office. How could his death create a vacancy unless in the eye of the law he was the incumbent of the office, notwithstanding his suspension? Bragg's removal, if he had been tried and convicted, would have created a vacancy, for the statute so declares. R. S. 1879, secs. 3337, 615. If his legal occupancy of the office was such that his death or removal from it would create a vacancy in it, why was not his legal occupancy of it such that he could create a vacancy by surrendering this legal occupancy? There is no merit in the claim that the respondent has a right to hold the office as temporary clerk until the successor to the regular clerk, Mr. Bragg, is elected. The act of April 28, 1877 ( Acts of 1877, p. 192 ), and of April 23, 1877 ( Acts of 1877, p. 346 ), the pertinent provisions of which are to be found in sections 615 and 3337 of the Revised Statutes, 1879, qualify the provisions of section 630, Revised Statutes, under which the respondent was appointed. In view of

these statutes, the word elected in section 630, if it should be given any force and effect whatever, must be construed to mean chosen according to law, or appointed according to law. Under the sections referred to, the governor had an undoubted right, in the event of the death of Bragg, or the resignation of Bragg, or the removal of Bragg, to appoint his successor.

*James Carr* and *Lee & Ellis*, for the respondent.

The office of clerk of a circuit court is a statutory office, and its tenure is regulated entirely by statute. R. S. 1879, sec. 614. The incumbent may be removed or suspended by the circuit court or judge, and such court or judge may then appoint a temporary clerk in his place. R. S. 1879, sec. 630. The tenure of office of the temporary clerk is "until the regular clerk shall resume his office, or a successor shall be elected." The appointment vests a perfect right in the temporary clerk to the office until one or the other of those events shall happen. The regular clerk, pending his suspension, cannot resign and thereby escape the penalty to which he is liable, and, at the same time, create "a vacancy" in the office, and thereby divest the temporary clerk of his perfect vested right to the office. *Hunter v. Chandler*, 45 Mo. 152; *People v. Hartwell*, 12 Mich. 508; *State v. Pierce*, 35 Wis. 93; *Edwards v. United States*, 103 U. S. 471; *Thompson v. United States*, 103 U. S. 480; *People v. Collins*, 19 Wend. 56; *Commonwealth v. Smith*, 45 Pa. St. 59, The respondent as temporary clerk has a perfect right to fill the office in question until the regular clerk shall resume his office, or a successor shall be elected, neither of which has happened. He took possession legally, and he still holds it legally, and, so long as he holds the office and performs the duties thereof according to law, there is, and there can be no "vacancy" in the office. The condition did not, and does not, exist, upon which the

governor is by the constitution authorized to appoint. Consequently, the appointment of the relator is null and void. Constitution, sec. 2, art. 5; *State ex rel. v. Lusk,* 18 Mo. 33; *Commonwealth v. Hanley,* 9 Barr. 513.

THOMPSON, J., delivered the opinion of the court.

This is a proceeding by information in the nature of a *quo warranto* at the relation of a private party, claiming title to the office of clerk of the circuit court of Dunklin county, against the respondent who is in possession of that office. The relator demurs to the return. The court has heard oral argument on the demurrer, and the case is now submitted on written arguments, and with the understanding that the decision of the court is to be a final disposition of the controversy. The facts, as stated in the return demurred to, are that on the sixth day of December, 1888, the regular clerk, William G. Bragg, Jr., was suspended from office by the judge of that court, under section 630 of the Revised Statutes of 1879, for certain alleged misdemeanors in office, and the respondent was thereupon appointed "a temporary clerk" in his place, under the same statute. On the seventh of January, 1889, three separate informations were filed by the prosecuting attorney of Dunklin county, in the circuit court of that county, against Bragg, for these alleged misdemeanors, which informations are still pending.

On the twenty-second day of January, 1889, while so suspended from office and prosecuted criminally for alleged misdemeanors in office, Bragg tendered his resignation of the office to the governor of the state. The governor accepted the same, and, acting under the provisions of section 11 of article 5 of the constitution of the state, and section 615 of the Revised Statutes of 1879, appointed the relator clerk of the circuit court of Dunklin county, to hold the office until the next general

election. The relator thereupon took the oath of office, and presented to the judge a sufficient bond with sufficient securities, which the judge refused to approve, not on the ground of its insufficiency, but on the ground that the relator was not entitled to the office. Thereupon the relator applied to this court for a *mandamus* to compel the judge to examine his sureties, and approve his bond, if found sufficient. We held that the judge had no power in this way to determine the title of the relator to the office; that the commission issued to him by the governor showed a *prima facie.* title to it, and that he had a right to have his bond approved, if sufficient, in order that he might show himself to be qualified for office and ready to enter upon the performance of his duties, and thus be in a position, standing at the threshold of the office, so to speak, to institute the proper proceeding for its possession, if entitled to it. We accordingly awarded a *mandamus* against the judge, in accordance with the prayer of the petition, at the same time expressly refraining from deciding that he was entitled to the office, or intimating an opinion on the subject. *State ex rel. Sanders v. Wear*, 37 Mo. App. 325.

The relator, having thus secured the approval of his bond, now brings this proceeding against the temporary clerk, appointed by the judge, to recover possession of the office. The only ground, on which his right to the office is resisted, is that the regular clerk had no power to resign the office, while under suspension and proceeded against criminally for alleged misdemeanors in office; that his resignation was consequently void; that there was hence no vacancy, and accordingly that the appointment of the relator was void.

No decision has been cited to us, which holds that a public officer is disabled from resigning his office with the concurrence of the official empowered to appoint his successor, by reason of the fact that he is suspended

from a performance of its duties, or that a criminal prosecution was pending against him for alleged misdemeanors in office. The weight of judicial authority is to the effect that a public officer cannot resign his office and cast off its duties at his mere pleasure, without the concurrence of the appointing power, since, if the rule were otherwise, society might be disorganized by reason of the refusal of public officers to perform the duties of their office (*Edwards v. United States*, 103 U. S. 471, and cases cited; Meacham's Public Offices, sec. 409); though considerable respectable authority supports an unqualified right of resignation. Meacham's Public Officers, sec. 409, and citations. But we apprehend that it is not the law that, while a public officer may resign his office under ordinary circumstances with the concurrence of the appointing power, yet he cannot resign it under circumstances where his resignation is itself a confession of his unfitness longer to hold it. In the impeachment trial of Belknap, Senators Frelinghuysen and Edmunds, both eminent lawyers, were distinctly of this opinion, and so was Senator Ingalls, though the question did not strictly arise, since Belknap resigned his office, and his resignation was accepted by the president, *before* the articles of impeachment were exhibited against him, though on the same day.

We have been cited by counsel for the respondent to a class of cases, which are to the effect that where proceedings have been commenced against an officer to test his title to his office, his resignation of the office or the expiration of his official term, while the proceedings are pending, will not prevent them from being prosecuted to a final determination. *Hunter v. Chandler*, 45 Mo. 452; *People v. Hartwell*, 12 Mich. 508; *State v. Pierce*, 35 Wis. 94. And so as to a corporate officer. *Commonwealth v. Smith*, 45 Pa. St. 59. The reason, which these authorities give for so holding, is that the proceeding is not instituted for the *sole* purpose of

The State ex rel. Sanders v. Blakemore.

removing the respondent; a fine may also be imposed; he may be adjudged to pay the costs; and the successful prosecution of the action by the relator may be, and generally is, necessary to enable him to maintain a subsequent action for the emoluments of the office. These authorities go no further than to show by analogy that the resignation of Bragg may not have had the effect, that he probably intended by it, to abate the criminal prosecution against him. Whether it did or not is a question not now before us for decision, and we do not intend to express any opinion upon it. We hold, however, that there is no rule of law or of public policy, that requires a man to remain in a public office in order to be punished by being removed from it.

This brings us to the question of the tenure of office which the temporary appointment of the judge vested in the respondent, for though Bragg, while under suspension, had the undoubted right to resign with the concurrence of the governor what further right or duty he had in respect of the office, it would not necessarily follow that the governor would have the power to appoint his successor; if, as counsel for the respondent argue, the tenure of the respondent's office is fixed by the statute until the next election, in any event except that of the restoration of the regular clerk, the governor would have no such power. This question must be decided by a comparison of the constitutional and statutory provisions bearing upon it.

Section 11 of article 5 of the constitution of the state is as follows:

"When any office shall become vacant, the governor, *unless otherwise provided by law*, shall appoint a person to fill such vacancy, who shall continue in office until a successor shall have been duly elected or appointed and qualified according to law."

Section 614 of the Revised Statutes of 1879 is as follows: "At the general election in the year eighteen

hundred and eighty-two, and every four years there-
after, except as hereinafter provided, the clerks of all
courts of record, except of the supreme court, the St.
Louis Court of Appeals, *and except as otherwise pro-
vided by law*, shall be elected by the qualified voters of
each county and of the city of St. Louis, who shall be
commissioned by the governor, and shall enter upon
the discharge of their duties on the first Monday in
January next ensuing their election, and shall hold
their offices for the term of four years and until their
successors shall be duly elected and qualified, unless
sooner removed from office."

Section 615 of the same statutes provides as fol-
lows:　"When any vacancy shall occur in the office of
any clerk of a court of record by *death, resignation,
removal, refusal to act or otherwise*, it shall be the
duty of the governor to fill such vacancy by appointing
some eligible person to said office, who shall discharge
the duties thereof until the next general election, at
which time a clerk shall be chosen for the remainder of
the term, who shall hold his office until his successor is
duly elected and qualified, unless sooner removed."

Section 630 of the same statutes contains the follow-
ing provision:　"When any court, or the judge or
judges, or a majority of them in vacation, shall believe,
from their own knowledge or from the information of
others, on oath or affirmation, that the clerk of the
court in which they preside has been guilty of a mis-
demeanor in office, they shall give notice thereof to the
attorney general or prosecuting attorney, stating the
charges against such clerk, and requiring him to prose-
cute the same ; and they may suspend such clerk from
office until a trial can be had, and appoint a temporary
clerk, who shall possess the same qualifications, take
the same oath, and give like bond as other clerks, and who
shall possess the same power, perform the same duties
and receive the like fees as other clerks, and shall

continue in office until the regular clerk resumes his office or a successor shall be elected.''

From the constitutional and statutory provision above quoted it is evident that the governor had the power to appoint the relator to the office upon the resignation of the regular clerk, unless it was "otherwise provided by law." Section 614 of the Revised Statutes of 1879, above quoted, shows that it is the general policy of the state that all clerks of courts, other than clerks of the supreme court and those of the appellate courts, shall be elected by the people, and not appointed by the judges. Section 615 contains a special provision intended to meet the exceptional case of the death, resignation, removal or refusal to act of any clerk of a court of record, and it confers on the governor the power to appoint an eligible person to fill the vacancy until the next general election. If a "vacancy" was created in the office, in the case before us, by the resignation of Bragg, this section answers all the arguments which have been made against the relator's title to the office; and such a vacancy was created, unless there was no "vacancy" by reason of the fact that section 630, above quoted, used the word "elected" instead of the words "elected or appointed." If we restrain this word "elected" to its literal sense, the conclusion of counsel for the respondent is a sound one. This is the only point in the whole argument which admits of any doubt. But we think that the word "elected," as thus used, includes "appointed" where the circumstances are such that it is appropriate to annex that meaning to it. The word, in a general sense, means "chosen" (Anderson's Dict. of Law, verb, "elect"), and is capable of being so read as to mean a choice by a vote of the people at an election or by the governor under his power of appointment.

That it is so used in a succeeding section of the same chapter is clear of all doubt. Section 639 provides: "All clerks of courts of record herein provided for, and

all *ex officio* clerks of courts of record now in office, shall continue in office and discharge all the duties of their respective offices until the expiration of the terms for which they were respectively *elected*." It is quite obvious that a clerk holding by *appointment* would, under this section, hold his office for the term to which he was appointed. It is true that, by the Revised Statutes, 1879, section 3126, words and phrases, other than technical ones, "shall be taken in their plain or ordinary and usual sense," "unless such construction be plainly repugnant to the intent of the legislature, or of the context of the same statute." Here we think it plainly repugnant to the intent of the legislature to construe the word elected as ousting the governor of his power of appointment conferred upon him by the constitution and by a provision of section 615 of the same statute.

It is obvious that there cannot be two clerks holding the same office. The regular clerk, by his suspension, either ceased to hold the *office*, or he did not. If he ceased to hold it, then no effect can be given to that part of the general statute relating to officers, which provides that an officer prosecuted for a misdemeanor in office may be *removed* from office. R. S. 1879, sec. 3337. It is clear then, that, notwithstanding his suspension, he was still the clerk, and that the respondent was what section 630 of the Revised Statutes of 1879 intends,—a mere "*temporary clerk*," a *locum tenens*, so to speak, holding the place only during the suspension of the regular clerk. But, if the respondent's position is correct, he holds the office until the next general election in every event except that of the restoration of the regular clerk. If the regular clerk should *die* during suspension, or if he should be *removed* by a judgment in the criminal proceedings, the governor could not appoint his successor to hold until the next general election, because the statute provides that the temporary appointee shall hold until his successor is "elected."

This would seem to be not only opposed to the obvious policy of the legislature of the state, but it would make section 630 quite out of harmony with section 615.

The judgment of the court will be that the demurrer to the return be sustained. And the court proceeding to enter judgment on said demurrer finds that the respondent is guilty of unlawfully holding and executing the office of clerk of the circuit court of Dunklin county. And it is considered by the court that he be ousted from the said office; that he pay to the state of Missouri the fine of one dollar, and that the relator recover the costs of this proceeding. It is so ordered. All the judges concur.

ROMBAUER, P. J., delivered the opinion of the court on an application of the respondent for an order allowing an appeal.

The respondent, having filed his bill of exceptions, now prays for an allowance of an appeal to the supreme court, and tenders his bond in the sum of three thousand dollars with two responsible sureties, and asks that the same be approved by the court and filed in this cause, to operate as a *supersedeas* of the judgment of ouster herein rendered. The relator resists the application on the ground that the laws of this state do not provide for an appeal from this court to the supreme court in any cause, and make no provision for a *supersedeas* bond.

The right of appeal is claimed by the respondent on the ground that the cause involves the construction of the constitution of this state and the title to an office under this state, and is, therefore, within the provisions of section 12 of article 6 of the constitution which provides: "Appeals shall lie from the decisions of the St. Louis Court of Appeals to the supreme court, and writs of error may issue from the supreme court to said court in the following cases only: In all cases where

the amount in dispute, exclusive of costs, exceeds the sum of twenty-five hundred dollars ; in cases involving the construction of the constitution of the United States or of this state ; in cases where the validity of a treaty or statute of, or authority exercised under, the United States is drawn in question ; in cases involving the construction of the revenue laws of this state, or the title to any office under this state ; in cases involving title to real estate ; in cases where a county or other political subdivision of the state or any state officer is a party, and in all cases of felony.''

The relator does not deny the superintending power and control of the supreme court over this court, but he contends that the adoption of the constitutional amendment, concerning the judicial department ( Laws, 1883, page 215 ), necessarily repealed that part of the section 12 of article 6 of the constitution, hereinabove quoted, and that the only methods provided by the constitution for the exercise of such superintending control are contained in section 8 of that amendment which provides : '' The supreme court shall have superintending control over the courts of appeals, by *mandamus*, prohibition and *certiorari*.'' While the subject is not free from doubt, we are inclined to hold that this view is the correct one.

It will be found on examination that the constitution before this amendment did in no way restrict the superintending control of the supreme court over this court. It provided in section 3, article 6 : '' The supreme court shall have a general superintending control over all inferior courts,'' and provided in section 12, above quoted, that such control may be exercised by appeal and writ of error in certain cases therein mentioned. Section 8 of the amendment, therefore, which prescribes the mode and manner in which the supreme court shall thereafter exercise such superintending control, is either exclusive of all other methods

or else we are bound to reject the entire section as surplusage and meaningless. Yet, under well-recognized canons of construction, we are bound to give full effect to it if we can.

The eleventh section of the amendment provides: "All provisions of the constitution of this state, and all laws of this state which are inconsistent with this amendment, shall, so far as inconsistent, upon its adoption, be forever rescinded and of no effect," and we must conclude that a provision, giving a certain superintending control in a *specific manner*, is necessarily inconsistent with a control in any other manner, and hence abrogates it.

It may be claimed that appellate jurisdiction and superintending control are different things, and hence a superintending control, though its manner is specifically prescribed, does not abrogate the right of appeal. The answer to this seems to be that the object of the entire amendment of 1883, was to do away entirely with the intermediate courts of appeal. Were it otherwise, no valid reason would exist why an appeal improvidently granted to this court, either because it involved an amount or question of law beyond the appellate jurisdiction of this court, might not be determined here in the first instance, and the party aggrieved still have the right to appeal from such determination to the supreme court under the provisions of section 12 of articles 6 of the constitution. The same reasoning, which gives him the right of appeal in cases originating in this court, would give him the right of appeal in cases improvidently appealed thereto. Yet it has never been held that an appeal lies in the latter class of cases, but the supreme court has uniformly exercised its superintending control by one of the remedial writs specially mentioned in the eighth section of the amendment.

The argument advanced by the respondent that the constitution contemplates that the supreme court alone

shall have final jurisdiction of certain questions is unquestionably correct, and we have never disputed it, but the question for decision before us is not whether the supreme court has final jurisdiction, which is conceded on all hands, but how that jurisdiction shall be exercised. Cases involving questions mentioned in section 12, coming to this court by appeal, are at once transferred to the supreme court under the provisions of section 3 of the amendment, and laws enacted in pursuance thereof, and the legislature might, if it saw fit to do so, provide by law for the transfer of causes, involving the same subjects and originating in this court, for final determination.

Nor is there any reason apparent why the right of appeal is essential to work out the aims of the constitution. The law makes no provision for a *supersedeas*. There is no provision for a trial of the cause *de novo* in the supreme court, and a *certiorari* is as effectual to remove the record from this court to the supreme court, as an appeal or writ of error can be ; in fact, as decided in *Chicago, Rock Island and Pacific Railway Co. v. Young*, 96 Mo. 39, the writ of *certiorari* in this state is in the nature of a writ of error at common law, and operates in the same way.

We may add that the views above expressed seem to us not only more in harmony with the principles underlying our present judicial system, but best designed to promote a speedy and safe determination of questions arising upon remedial writs. The power to hear and determine such cases is expressly given to the court of appeals. The danger of the abuse of the power on their part is carefully guarded by the superintending control of the supreme court by prohibition and *certiorari*. *Certiorari* is a writ of discretion, and the supreme court may in any case determine upon inspection of the record whether it presents a proper case for its issuance ; but the right of appeal, if it exists at all, is a right not controlled by the discretion of any court,

and places it within the control of either party to pro-
tract indefinitely a litigation, in the speedy settlement
of which, from its very nature, not only the litigants
themselves, but also the public, may be, and often are,
greatly interested.

As above said we do not deem the question free
from doubt, and are desirous of having it tested and set
at rest. If this court is a mere trial court, in the full
sense of the term, of causes brought here by original
remedial writs, then there is no reason why it should
entertain them at all. Where the rights of the parties
depend on contested facts, the circuit courts furnish a
much more convenient forum for settling the contro-
versy, and where they depend purely on contested
propositions of law, the parties had better apply directly
to the supreme court where they can obtain a final
hearing at once.

We will deny the appeal, so that the respondent
may have the question tested at once, by applying for a
writ of error or *mandamus* in the supreme court, or at
his election for a writ of *certiorari*. Appeal denied.

In the views herein expressed Judge BIGGS concurs.
Judge THOMPSON dissents.

THOMPSON, J. (*dissenting*).—My view briefly is
that the original grant of jurisdiction to this court, in
the constitution of 1875, in proceedings by *quo war-
ranto*, is coupled with a provision giving the right of
appeal to the supreme court in cases like the one before
us ; that this right of appeal has not been taken away,
either in express terms or by necessary implication, by
the constitutional amendment ; and that such an impli-
cation is precluded by the rule that repeals by implica-
tion are not favored, especially where they work a
deprivation of previously existing rights. But I concur
with my associates that no provision of law exists,
authorizing a *supersedeas* in case of such an appeal.