### In re Buffalo Township Supervisor

*Thomas W. King, III,* for petitioner.
*Lee A. Montgomery,* for Buffalo Township.

KIESTER, *P.J.,* July 20, 1979—In this declaratory judgment proceeding Gary Risch requests the court to determine that Gary Risch "is and remains" a supervisor of the Township of Buffalo. The procedure adopted by petitioner in presenting the issue is unchallenged. It appears under the facts to be the proper procedure for petitioner to obtain a legal ruling on his status.

The facts are that Gary Risch, at a meeting of the board of supervisors on June 13, 1979, submitted his resignation in writing and left the meeting. At the time Mr. Risch admittedly intended that the resignation take effect immediately. The board took no action on the resignation. Thereafter, the chairman of the board instructed the secretary to advertise a special meeting for July 5, 1979, to fill the vacancy. On or about July 3, 1979, Mr. Risch requested the secretary to return to him the letter of resignation. The secretary furnished Mr. Risch with a copy. At the meeting on July 5, Mr. Risch submitted to the board secretary and to each supervisor who was present a letter rescinding the resignation. Thereupon the written resignations of Supervisors Cole, Parker, and Young that had been filed with the secretary prior to the meeting were

read by the secretary. No board action was taken. The final item of business was the reading by Supervisor Gray, Chairman of the Board, of his resignation which he also submitted in writing.

Upon the conclusion of the hearing on July 17, 1979, the court consulted in chambers first with the attorneys, and then with the attorneys and their clients. Supervisors Carroll S. Gray, Regis Cole, and Robert Parker rejected all proposals that they return to the board. The efforts of the court and counsel to reconstitute the old board by a compromise arrangement failed.

The only issue before the court in this proceeding is whether the "admitted" resignation of Mr. Risch was effective without some affirmative action by the remaining supervisors.

There is a dearth of law on the subject. At common law a public officer could not resign his office without the consent of the body that appointed him or had the power to fill the vacancy. The rationale of the rule is stated in an 1880 decision of the United States Supreme Court:

"As civil officers are appointed for the purpose of exercising the functions and carrying on the operations of government, and maintaining public order, a political organization would seem to be imperfect which should allow the depositaries of its power to throw off their responsibilities at their own pleasure. This certainly was not the doctrine of the common law. In England a person elected to a municipal office was obliged to accept it and perform its duties, and he subjected himself to a penalty by refusal. An office was regarded as a burden which the appointee was bound, in the interest of the community and of good government, to bear.

And from this it followed of course that, after an office was conferred and assumed, it could not be laid down without the consent of the appointing power. This was required in order that the public interests might suffer no inconvenience for the want of public servants to execute the laws." Edwards v. U.S., 103 U.S. 471, 473 (1880).

The Edwards decision, the textbook authorities, and the court decisions support a principle that may be stated as follows: the resignation of a public officer is not complete until the proper authority accepts it, or does something tantamount thereto, such as to appoint a successor.

The above principle would be the Pennsylvania law applicable to the resignation of a supervisor in the absence of section 420 of The Second Class Township Code of May 1, 1933, P.L. 103, as amended, 53 P.S. §65420, relating to vacancies. It reads:

"If the electors of any township shall fail to choose a supervisor, tax collector, auditor or assessor, or if any person elected to such office shall neglect or refuse to serve therein, or if a vacancy shall occur in the office by death, resignation, removal from the township, or otherwise, a majority of the remaining supervisors may appoint a successor who is a registered voter and upon their failure to make such appointment within thirty days after the vacancy occurs, the vacancy shall be filled within fifteen additional days by a vacancy board consisting of the board of supervisors and one registered elector of the township, who shall be elected by the board of supervisors at each reorganizational meeting and who shall act as chairman of the va-

cancy board. If the vacancy board fails to fill the position within the time prescribed, the chairman shall petition the court of common pleas to fill the vacancy. In all cases, the successor so appointed shall hold the office until the first Monday in January after the first municipal election occurring more than sixty days after the vacancy occurs, at which election an eligible person shall be elected for the unexpired term."

The court must interpret this section because there is lacking a specific statutory provision therein or elsewhere of what is required to effect the resignation of a public officer other than the general principle I have already stated.

An application of the general principle could have the effect of nullifying the time tables for filling "vacancies" as established by section 420. This assumes that the legislature intended that the time tables for the board of supervisors and the vacancy board to fill a vacancy commence on the date that the supervisor, attempting to resign, properly submitted his unconditional resignation at a regularly scheduled meeting of the supervisors. Nothing was presented to the court relative to the legislative intent upon enactment of section 420. Therefore, the court must determine the legislative intent from the content of the statute.

If formal acceptance or the equivalent of an acceptance of a resignation is a requirement, the remaining supervisors could by inaction control the operation of the time tables set forth in the statute. There would be no vacancy until some form of acceptance of the resignation occurred. In the case before us the court might guess that the remaining members of the board tacitly accepted the resignation. The chairman did call a special meeting to

replace Mr. Risch. At the July 5, 1979, meeting, when Mr. Risch "withdrew" his resignation, the remaining supervisors promptly resigned. This, at a minimum, expresses an adverse attitude toward Mr. Risch, although it might have occurred too late to be construed as a form of acceptance of the resignation under the general principle.

In enacting section 420 it is inconceivable that the legislature intended other than that a supervisor has the absolute right to resign his office and that a resignation properly submitted creates a vacancy as of that date. The legislature intended that a full board be reconstituted within the time tables of the statute. It did not intend that the remaining supervisors could delay the vacancy date and the time tables by failing to take action on a resignation. It is not reasonable to conclude that the statute and the general principle are compatible, i.e., that a vacancy in the office may occur and thereafter a resignation may be withdrawn. In this court's opinion section 420 changes the common law by providing that a township supervisor has the right to resign his office and that the resigning supervisor rather than the remaining supervisors fixes the effective date that the office is vacated.

## ORDER

Now, July 20, 1979, based upon the findings of fact and conclusions of law set forth in the accompanying opinion, the court declares that Gary Risch resigned his office of supervisor of the Township of Buffalo, and that said resignation became effective when presented to the board at the regular meeting on June 13, 1979. By reason of said resignation a vacancy has existed on said board of supervisors since June 13, 1979.