[No. 1505.]

STATE OF NEVADA, EX REL. JOHN B. WILLIAMS, RELATOR, *v.* H. H. BECK, RESPONDENT.

OFFICE, CIVIL, RIGHT TO RESIGN AT PLEASURE. A civil officer has the right to resign his office at his own pleasure and will, and the acceptance or rejection of such resignation can in no manner affect such right.

IDEM—RESIGNATION—WITHDRAWAL OF. A contingent resignation by a county official is subject to withdrawal by him at any time before the contingency happens, and the action of the governor in refusing to return the resignation, when required so to do, before such time, is of no effect.

IDEM—CONDITIONAL RESIGNATION OF COUNTY COMMISSIONER. A county commissioner sent his resignation to the governor, to take effect, if he was not held blameless as to certain charges by "judicial investigation," or if such an investigation should not be held within sixty days: *Held,* that the resignation was not absolute, but contingent upon the happening or non-happening of one of the two events named therein.

IDEM—WITHDRAWAL OF. Before the investigation was held and before the sixty days had expired, the commissioner wrote to the governor, requesting that his resignation be returned to him: *Held*, that this constituted an absolute withdrawal of the resignation while still contingent. (BONNIFIELD, J., dissenting.)

ORIGINAL PROCEEDING. *Quo warranto* by the State, on the relation of J. B. Williams, against H. H. Beck, Respondent, to oust respondent from the office of county commissioner. Dismissed.

The facts appear in the opinion.

*James R. Judge,* Attorney-General, and *Torreyson & Summerfield,* for Relator:

I. The letter constituted an absolute and not a conditional resignation. The language is emphatic and in the present tense, to wit: "I hereby resign said office." It is not a notice that he will resign at some future day. It is not limited to take effect at some certain future time. It merely "begs" the governor not to appoint his successor until a judicial examination should be held, or until sixty days should expire in the absence of such judicial investigation. In order to emphasize the completeness of his resignation he declares in his letter to the governor that "In the meantime I shall consider my duties as county commissioner suspended," thus clearly indicating his unwillingness to act as a *de facto* county commissioner. Had it been the intention of respondent to resign conditional upon the occurrence of some subsequent fact, or at some certain future time, it would have been entirely unnecessary for respondent to "beg" the governor to hold the resignation at all, as respondent would have as a matter of law remained in the office pending such time. "To constitute a complete and operative resignation there must be an intention to relinquish a portion of the term of the office, accompanied by the act of relinquishment." (*Biddle* v. *Willard,* 10 Ind. 62.)

II. When an unconditional resignation is transmitted to the proper officer with the intention that it shall operate as such, it amounts, so far as the officer making it is concerned, to a resignation. (Mechem's Public Offices, sec. 411; *State* v. *Clarke,* 3 Nev. 519; *State* v. *Fitts,* 49 Ala. 402.)

III. Even should respondent's letter be held to be no more than a conditional resignation, yet any condition or conditions which are contained therein are unavailing to respondent in this proceeding. The entreaty of respondent to the governor "to hold the same subject to the findings of a judicial investigation" is not a condition, but is merely the solicitation from the governor of the favor of not appointing his successor within sixty days unless such judicial investigation should find him blameworthy before such time. It is very apparent from the mere reading of the letter that the governor was requested simply to defer the appointment of respondent's successor. If the judicial investigation should find respondent blameless then it was requested that his successor should not be appointed for sixty days. Should no judicial investigation be held, then it was requested that no appointment be made until sixty days had elapsed. Should a judicial investigation be held before sixty days had elapsed, and respondent be found remiss in his duty, then his successor should be appointed upon such finding being made, regardless of what period of time had elapsed. The employment of the words "final resignation" and "suspension" are without significance when considered in connection with the plain import and meaning of the letter in its entirety.

IV. If it be contended by respondent that his resignation was conditional, it is apparent that the only possible condition contained therein that might render it ineffectual is the anticipation of his being found "blameless" as the result of judicial investigation. But he was not found to be blameless. The gist of the criticism which led to respondent's resignation was the charge of voting for the allowance of an illegal demand against Washoe county. The judicial investigation resulted in a finding that there was no law authorizing its payment, which was the equivalent of a finding that the demand was illegal and that its allowance by the commissioners was illegal, and per consequence that respondent's act in voting for its allowance was illegal.

*Wren & Julien,* for Respondent:

I. The so-called resignation was conditional, upon any

fair and common-sense construction of its language. In construing a written instrument, like a statute, the entire instrument must be read and construed as a whole. Every qualifying word and phrase must be given full force and effect. (*Thorpe* v. *Schooling*, 7 Nev. 15; *State* v. *Ross*, 20 Nev. 61; *Maynard* v. *Newman*, 1 Nev. 271; *Odd Fellows' Bank* v. *Quillen*, 11 Nev. 109.)

II.   Construing the so-called letter of resignation of respondent by this rule, it is perfectly obvious that respondent only intended to resign upon the happening of certain contingencies, namely, the calling of a grand jury to investigate his official action within sixty days of the date of his so-called letter of resignation, and the failure of the grand jury, if called, to find him blameless in regard to the charge made in the article set out in relator's complaint.

III.   Within less than sixty days after the date of the so-called letter of resignation a grand jury was called, and in less than sixty days after the so-called letter of resignation was written, he wrote to the governor three letters, copies of which are set out in the stipulation of the facts, recalling his resignation. Under the authorities this was sufficient to render the so-called letter of resignation of no effect. (*State* v. *Clarke*, 3 Nev. 571, and cases cited.)

By the Court, MASSEY, J.:

The respondent was duly elected county commissioner of Washoe county, State of Nevada, at the general election held therein on the 3d day of November, 1896, for a term of four years, commencing on the first Monday in January, 1897, duly qualified as such, and has since that time discharged the duties of said office.

On the 8th day of April, 1897, the respondent transmitted to R. Sadler, the acting governor, the following letter:

"RENO, NEVADA, April 8, 1897.
"*His Excellency*, R. SADLER, *Governor of Nevada, Carson City, Nevada*.

"SIR:   In view of serious charges, as appear in the Nevada State Journal, of even date hereof, made against me as a public official of this, Washoe county, I hereby resign said

office, to wit, county commissioner of Washoe county, Nevada, and beg you to hold the same subject to the findings of a judicial investigation which I have this day demanded and requested of the proper authorities, to wit: The honorable district judge of our district and the honorable T. V. Julien, district attorney of my county. Unless such investigation shall find me blameless, or in case such investigation shall not be held for a term of sixty days from the date hereof, then, and in either event, you will consider this my final resignation and proceed under the law to appoint my successor. In the meantime I shall consider my duties as county commissioner suspended. Very respectfully,

"H. H. BECK."

This letter was indorsed by the governor: "Resignation accepted upon the conditions named therein. R. SADLER."

The charges published in the Reno Journal, and referred to in the above letter of the respondent, were to the effect that the respondent had voted to allow a bill for disinfecting a room where a child had recently died with a contagious disease, and that there was no authority of law for the allowance of the same. On the 26th day of May, 1897, the respondent wrote and transmitted the following letter to the governor:

"RENO, NEVADA, May 26, 1897.

"*His Excellency*, R. SADLER, *Governor of Nevada, Carson City, Nevada.*

"SIR: Please return to me my conditional resignation, under date of April 8, 1897. Since then the district judge has called a grand jury and I am assured that the charges made against me by a local paper will be investigated. Very truly yours, H. H. BECK,

"County Commissioner, Washoe county, Nevada."

On the 29th day of May, 1897, the governor, in answer to said letter, refused to return to the respondent the letter of resignation, assigning as a reason therefor that the same had been filed in the archives of the executive department, and had been accepted subject to the conditions named. Further correspondence passed between the respondent and the governor relative to this matter, but as the same is not necessary

in determining the questions presented by this action, it is omitted. On the 4th day of June, 1897, the grand jury of Washoe county reported to the district court therein the result of the investigation of the matters referred to in respondent's letter of resignation, in which report the grand jury commended the county auditor of said county for refusing to draw his warrant for the amount of said claim, and expressed the belief that the board of county commissioners had acted in good faith and for the best interests of the people in taking action to prevent the spread of a dangerous disease.

On the 7th day of June, 1897, the relator was appointed and commissioned by the acting governor as county commissioner of Washoe county to fill the vacancy occasioned by the alleged resignation of the respondent, and thereafter took the required oath as such. On the 5th day of July, 1897, the relator demanded of the respondent the possession of said office, which demand was refused, since when the respondent has continued to exercise the functions of said office, and has excluded the relator therefrom.

Upon these facts the relator asks the court to adjudge the respondent not entitled to said office, that he be ousted and excluded therefrom, and that relator be admitted thereto and to all the rights and emoluments thereof.

The character of respondent's act in transmitting his resignation to the governor, the effect thereof, whether the resignation is conditional or absolute, and the effect of the subsequent transactions occurring after the receipt of the resignation by the governor are the only matters necessarily to be considered in determining the question presented in this proceeding.

The relator contends that the letter of April 8, 1897, is an absolute and unconditional resignation of the office of county commissioner. We cannot so hold. The resignation was to become effective at a future date and upon the happening of two specified contingencies, to wit: in case the judicial investigation demanded should not be had within sixty days from the date of the letter, or in case said investigation should fail to hold the respondent blameless in the matter

charged. These are the express conditions named upon which the resignation should become final and effective.

The act of the governor, in accepting the resignation of the respondent and in refusing to return the same upon demand, is neither material nor important, for it has been settled by this court that a civil officer has the right to resign his office at his own pleasure and will, and the acceptance or rejection of such resignation can in no manner affect such right. (*State, ex rel. Nourse,* v. *Clarke,* 3 Nev. 566.)

The resignation of the respondent being conditional and not to take effect except upon certain contingencies and at a future day, there was no vacancy in the office until the happening of the contingencies and until the arrival of such day. In the mean time, the resignation was within the control of the respondent and could be withdrawn at his pleasure, and if such withdrawal was made by the respondent, he stands as if he had never written nor sent said resignation. (*State* v. *ex rel. Nourse,* v. *Clarke, supra.*)

The question then is: Did respondent withdraw his resignation before the happening of the contingencies named therein and within sixty days from the date thereof? We think he did. The letter of resignation was written and transmitted on the 8th day of April, 1897. On the 26th day of May, 1897, before the sixty days had elapsed and before an investigation of the charges had been made by the grand jury, the respondent transmitted to the governor the letter in which he asked the return of the conditional resignation under date of April 8, 1897. This letter was an absolute withdrawal of such resignation. At the time the same was written, the resignation was subject to withdrawal and entirely within the control of the respondent. It cannot be a matter of any importance what reasons were assigned by the respondent for the transmission of his letter of resignation or in transmitting the letter withdrawing the same. Having withdrawn the resignation, at a time when the same was subject to such withdrawal, and before the happening of the contingencies named, there was no vacancy in the office of county commissioner of Washoe county at the time the relator was appointed by the governor, and therefore such appointment conferred no right to such office upon the relator.

Other questions were discussed by counsel for the respect-ive parties, but we do not deem it necessary to pass upon the same.

For these reasons the proceedings will be dismissed at relator's cost and judgment entered accordingly.

BELKNAP, C. J.:   I concur.

BONNIFIELD, J., dissenting:

I cannot concur in the conclusion arrived at in the above opinion that respondent's letter of May 26th was an abso-lute withdrawal of his resignation of the 8th day of April, and must therefore respectfully dissent from the judgment.

I am of opinion that the respondent was acting in good faith when he notified the governor of his desire to no longer hold his office, unless a judicial investigation, which he had demanded, should hold him blameless with respect to what he regarded as " serious charges " made by the Nevada State Journal.   His counsel claimed that the respondent, being assured that the grand jury would be called and that he would be exonerated by them, withdrew his resignation by the said letter of May 26th.   From this it appears to me that his withdrawal was based solely on the contingency of his being exonerated; that he did not at that time intend to withdraw his resignation regardless of said charges and with-out reference to whether he was exonerated or not.

The charges contained in the newspaper article were that a bill presented by Professor W. McN. Miller to the board of county commissioners for fumigating a room in a hotel at Reno was not a legal charge against Washoe county; that there was no law authorizing said work to be done at the county's expense, and that the board allowed said bill by unanimous vote.   After setting out the items of the bill, the author of the article claimed that the charges therefor were not only illegal but most extravagant, and concluded his comments as follows:   "In view of this there can only be one construction put upon the whole matter and that is that maudlin sentimentality has overcome the better judg-ment of sensible men."

It seems that the respondent regarded these charges as being of such serious nature that he determined not to retain

his office, unless he was held blameless by a judicial investigation. Entertaining this view of the matter he exhibited a commendable public spirit in desiring to be relieved of his official responsibilities, a spirit, however, not commonly manifested in like manner, in official circles. It is clear to my mind that he did not change his mind with respect to his resignation until the 5th day of June. On that day he wrote to the governor as follows: * * * "Sir: I hereby recall my conditional resignation of date April 8, 1897. Very respectfully, H. H. Beck." * * *

That letter was evidently intended by him as an absolute withdrawal of his conditional resignation. If he had regarded his letter of May 26th as being such withdrawal, there was no necessity or propriety in absolutely withdrawing it again. If he intended on the 26th day of May to absolutely withdraw his resignation, I am of opinion that he would have done so in the clear and concise form he attempted to withdraw it on the 5th day of June, without reference to any assurance that he had that the charges would be investigated, and without regard to any assurance that he would be exonerated.

On the 4th day of June the grand jury reported to the court as follows:

" We have examined into the charges made by publication in the Nevada State Journal alleging certain illegal acts of the board of county commissioners and find as follows, after examining several witnesses:

"A child died at the Clarendon Hotel in this city on the 21st day of February, 1897, of malignant scarlet fever; that there was great danger of the disease spreading, and that the attending physician notified the chairman of the board of county commissioners of the danger and advised him of the necessity of having the premises and clothing in the rooms immediately and thoroughly fumigated, and that after further consultation the chairman of the board of county commissioners requested the attending physician to have the necessary fumigating properly done, that the danger of the spreading of the disease might be averted; that it was accordingly done in a thorough manner by him and under his supervision. Subsequently at a meeting of the board of

county commissioners held April 7, 1897, Dr. Miller presented a bill for $76 15; that said bill was unanimously allowed by said board and was later properly vetoed by the auditor, and at a later meeting of the board the auditor's veto was sustained. While we commend the action of the auditor in refusing to draw his warrant in payment of this bill and believe there was no law authorizing its payment, we believe the chairman and other members of the board of county commissioners acted in good faith and for the best interests of the people of this community in thus taking action in preventing the spread of a dangerous and generally fatal disease."

Counsel seemed to think that the conditional resignation was simply a foolish act on the part of the respondent, and argued that, however it might be considered, the grand jury had fully exonerated the board from the charges made, and hence that under the terms of the letter of the 8th day of April the conditional resignation never took effect. It is true the grand jury found that the respondent and the other commissioners acted in good faith in thus taking action in preventing the spread of a dangerous disease. The jury, however, found that the charges made by said article were substantially true, that is, that said board unanimously allowed said bill of Dr. Miller of $76 15, and that there was no law authorizing its payment. It was not charged against the commissioners, or either of them, that they acted in bad faith, but their alleged illegal acts were ascribed solely to maudlin sentimentality having overcome their better judgment as sensible men.

It appears to me that the respondent was of opinion that he could legally withdraw his resignation at any time before the governor made his appointment, and that on the 5th day of June he changed his mind with respect to his resignation and concluded to withdraw it absolutely, which he then attempted to do. It is probable that at that time he, too, considered that his conditional resignation was a foolish act. The validity of a resignation does not depend upon the resignation being based on sensible grounds, nor can it be defeated by its being a foolish act. In my view of the case his resignation took effect on the 4th day of June when

the grand jury submitted their report to the court, and that at that time his right of withdrawal ceased.