[No. 1764.].

## THE STATE OF NEVADA, EX REL. M. E. RYAN, RELATOR, *v.* M. J. MURPHY, RESPONDENT.

1. OFFICERS—RESIGNATION—ACCEPTANCE. Independent of statute, and under Comp. Laws, 1814–1816, authorizing any officer to resign by transmitting the resignation to prescribed officers, and declaring that the office shall become vacant on the resignation of the incumbent, an acceptance is not necessary to effect a resignation.

2. SAME. A public officer shall not be permitted to vacate an office and then assume it again at will; and this he cannot do as a matter of law, independent of any question of public policy.

3. SAME—WITHDRAWAL OF RESIGNATION. A sheriff, who presented to the board of county commissioners his resignation to take effect on a designated future day, may before such day withdraw it, notwithstanding the board's acceptance thereof.

TALBOT, C. J., dissenting.

ORIGINAL PROCEEDING by the State, on the relation of M. E. Ryan, against M. J. Murphy, to oust respondent from the office of Sheriff of Lander County. **Demurrer to petition sustained**.

The facts sufficiently appear in the opinion.

*W. D. Jones* and *Summerfield & Curler*, for Respondent:

I.   The absolute right to resign at any time is granted every officer of the state by the laws thereof. This is declared not only by judicial determination (*State* v. *Clarke*, 3 Nev. 574; *State* v. *Beck*, 24 Nev. 98), but by statute. Comp. Laws, 1814, provides: "Any person who shall receive a commis-

sion, or a certificate of his election or appointment shall be at liberty to resign such office, though he may not have entered upon the execution of his duties, or taken the requisite oath of office." Comp. Laws, 1815, provides: "Resignations of office shall be made as follows, to wit: Fourth—By all county officers (except district judges and they to the governor) to the board of county commissioners of their respective counties." Comp. Laws, 1816, provides: "Every office shall become vacant upon the occurring of either of the following events before the expiration of the term of such office: First—The death or resignation of the incumbent." Comp. Laws, 1820, provides: "Whenever a vacancy occurs in any office as specified in this act (except in cases of resignation made to the governor or legislature, or board of county commissioners, in which cases it is the duty of the governor and such boards of county commissioners to issue a writ of election, or make an appointment to fill such vacancy, as the case may be), the secretary of state," etc. Comp. Laws, 1822, provides: "When, at any time, there shall be in either of the county or precinct offices (except the office of district judge) no officer duly authorized to execute the duties thereof, some suitable person may be temporarily appointed by the board of county commissioners to perform the duties of such offices, until they are filled by election or appointment, as provided by law." Comp. Laws, 1830, provides: "When any vacancy shall exist or occur in the office of county clerk, or any other county or township office, except the office of district judge, the board of county commissioners shall appoint some suitable person to fill such vacancy until the next general election."

II. From these provisions of the statute it is manifest that the absolute right of resignation is vested in every officer of the state, and, further, it is plain that the legislature never intended that the resignation of an officer should depend on the acceptance of his resignation by any other officer or person, and in fact it is manifest that the power or right of acceptance of resignation was never intended to be vested in any officer or person, and nowhere in this act, or in any other law of the State of Nevada that counsel for respondent

have been able to find, is there any provision for the accept-
ance or rejection of a resignation, and it therefore follows
that the board of county commissioners of Lander County
had no right or power to either accept or reject the resigna-
tion of M. J. Murphy as sheriff of Lander County if it can be
held that he ever made such a resignation.  As to the third
proposition, counsel for respondent maintain that if the board
of county commissioners had the right or power to accept the
resignation of M. J. Murphy, that right or power could not
be exercised before the 15th day of April, 1908.   This writ-
ing, claimed to be a resignation, was made on the 3d day of
February, 1908, seventy-two days before there could have
been a vacancy in the office under the terms of the writing
itself, and had M. J. Murphy died in the meantime the vacancy
would not have occurred by virtue of resignation but by virtue
of death, and if the purported acceptance of the resignation
by the board of county commissioners had the effect of ter-
minating his office on the 15th day of April, 1908, then his
office must be held to be vacant by resignation, and not by
death.   The two positions are inconsistent under the law,
and we maintain that it logically follows that if any right or
power of acceptance rested in the board of county commis-
sioners, that right could not be exercised until the 15th day
of April, 1908, and that therefore there never has been any
acceptance of any resignation tendered by M. J. Murphy.

III.   An examination of the decisions of the Supreme
Court of the United States, and of the supreme courts of the
different states of the Union where this question has been
discussed, will show a wide divergence of opinion.  Some of
the courts hold that no resignation of a public office can be
had except with the concurrence of the officer to whom the
resignation should be addressed, and that no vacancy in the
office can occur until the resignation has been accepted, and
that the officers elected or appointed hold office until the
resignations are accepted or their successors have been
appointed.   The other view of the law is that a public officer
has the right to resign his office at pleasure, and it is not
within the power of the person to whom the resignation
should be addressed to compel a person to remain in office.

In this state the doctrine is maintained, and always has been, that the right and power to resign rests absolutely in the officer and the officer has absolute control over his resignation until the time arrives for it to take effect. This rule of law having been judicially determined by the Supreme Court of the State of Nevada, it must be held that M. J. Murphy tendered his intended or prospective resignation subject to the rule of law as theretofore announced by the court, and that it would be unfair to hold at the present time that he did not have the absolute right to withdraw it at any time before the 15th day of April, 1908.

*W. D. Jones* and *Summerfield & Curler*, for Respondent, in reply:

I. The language as claimed by counsel must indicate a present decision, but what a person decides to-day that he will do next week or next month may not be what he will decide he will do next week or next month or to-morrow, and the decision reached by Murphy on February 3, 1908, as manifested by his letter of that date to the board of county commissioners, was an entirely different decision than that reached by him on February 29, 1908, as manifested by his letter of that date and by his letter of March 30, 1908. In discussing this identical question from a legal standpoint the Supreme Court of Indiana said: "To constitute a complete and operative resignation there must be an intention to relinquish a portion of the term of the office, accompanied by the act of relinquishment. Webster and Richardson define the words 'resign' and 'resignation' substantially thus: 'Resign, to give back, to give up, in a formal manner, an office, and resignation is the act of giving it up.' Bouvier says resignation is the act of an officer by which he declines his office and renounces the further right to use it. Hence, a prospective resignation may, in point of law, amount to but a notice of intention to resign at a future day, or a proposition to so resign, and, for the reason that it is not accompanied by the giving up of the office, possession is still retained, and may not necessarily be surrendered till the expiration of the legal term of office, because the officer may

recall his resignation—may withdraw his proposition to resign." (*Biddle* v. *Willard*, 10 Ind. 66; *State* v. *Clarke*, 3 Nev. 575; *State* v. *Beck*, 24 Nev. 98; *State* v. *Van Buskirk*, 56 Mo. 17; *Richards* v. *Slonaker*, 32 Kan. 191.)

II.   Counsel seems to find some analogy between the doctrine of delivery of a resignation and the delivery of a deed or note, but none whatever can be found in the law.   Mechem on Public Officers says, at section 3: "An office also differs from a contract, for, as has been said, the latter from its nature is necessarily limited in its duration and specific in its objects.   The terms agreed upon define the rights and obligations of both parties, and neither may depart from them without the consent of the other." Sec. 4: "The most important characteristic which distinguishes an office from an employment or contract is that the creation and conferring of an office involves a delegation to the individual of some of the sovereign functions of government, to be exercised by him for the benefit of the public; that some portion of the sovereignty of the country, either legislative, executive or judicial, attaches, for the time being, to be exercised for the public benefit.   Unless the powers conferred are of this nature, the individual is not a public officer." Sec. 5: "In distinguishing between an office and an employment the fact that the powers in question are created and conferred by law is an important criterion.   For, though an employment may be created by law, it is not necessarily so, but is often, if not usually, the creature of contract.   A public office, on the other hand, is never conferred by contract, but finds its source and limitations in some act or expression of the governmental power."

III.   Counsel for respondent have examined with particular care the case cited by counsel for petitioner, and found in 91 Pac. at page 4.   Instead of that case being in favor of counsel for petitioner, we maintain that it does not militate at all against the position of counsel for respondent, but rather is an authority in respondent's favor.   In that case the court of Washington said: "The case of *Bunting* v. *Willis*, 27 Grat. (Va.) 144, 21 Am. Rep. 338, is also cited, but in that case it was said that a prospective resignation may be

withdrawn at any time before it is accepted, thus recognizing that a resignation is not complete so as to create a vacancy until it has been accepted." And the court reaches the conclusion that in Washington a resignation to be complete must be accepted, and holds that in the absence of some statutory provision the common law of England is applicable on the question of resignation, and, so holding, reaches the conclusion that a resignation in the State of Washington to be complete must be accepted.

*Cheney, Massey & Price, A. J. Maestretti,* and *Lewers & Henderson,* for Petitioner, in reply:

I. The labored effort of respondent's counsel to twist the meaning of Murphy's words is a clear indication of the weakness of their case. Relying entirely upon the Beck case, they recognize that they must bring the present case within the terms of that case. Therefore they insist that Murphy merely served notice that he would or might resign in the future. His later correspondence indicates that he regarded his letter as a resignation. If it were not, why should he endeavor to withdraw it. It was enough for him to fail to resign on April 15th if his letter of February 3d was merely a promise or statement of intention. He does not endeavor to withdraw permission to deliver the letter on April 15th, consequently he must have regarded it as delivered. It is plain that he merely changed his mind and tried to undo what he had already done. Another significant fact indicates the true character of the letter of February 3d. If it was not a present resignation, what occasion had he to present it to the commissioners at all? The law requires no notice of intention. He undoubtedly was familiar with section 1815, Comp. Laws, requiring that resignations be made to the commissioners. Knowing this, he presented his letter to the board as the appropriate and necessary manner of resigning. No particular form is required for a resignation. If the present surrender of the office, the vacancy to begin either at once or later, is clearly indicated by the words used interpreted in connection with surrounding facts, the resignation is direct

and not conditional. (*State* v. *Augustine*, 113 Mo. 21; *Smith* v. *Dyer*, 1 Call, 489; *Pace* v. *People*, 50 Ill. 432.)

II.  At the outset, it must be recognized that the general common-law rule concerning resignations is at variance with the rule laid down in *State* v. *Clarke*, 3 Nev. 566.  The latter case holds that acceptance is not necessary for the completion of a resignation, while the common-law rule is that it is. (*Edwards* v. *U. S.*, 103 U. S. 471; *Hoke* v. *Henderson*, 4 Dev. N. C. 1; *Coleman* v. *Sands*, 13 S. E. 148; *McGee* v. *Dickey*, 23 S. W. 404; *People* v. *Williams*, 145 Ill. 573, 30 Am. St. Rep. 514; *U. S.* v. *Justices*, 10 Fed. 460; *State* v. *Kitsap Co.*, 91 Pac. 4.)  Particular attention is called to this last case from Washington because it contains a very full review of the authorities and also discusses the effect of statutory provisions identical with our own.  These cases indicate beyond a doubt that at common law acceptance was necessary before a resignation became complete.  This court has twice said that acceptance is not necessary, and counsel for respondent attach great importance to these holdings.  We fail to appreciate their point of view, because the decision of the case at issue does not depend on that proposition at all.  If acceptance is necessary, there was an acceptance of Murphy's resignation. If it was not necessary, Murphy had done all that was in his power to resign and the acceptance was merely superfluous. It certainly took nothing away from the final character of Murphy's act.  We have called the court's attention to the fact that the Clarke case is contrary to the great weight of authority, not because we are attacking the real decision made by that case, but that this court may clearly confine that case to its real holdings.  As appears from the decision it was made upon very slight discussion or consideration of the authorities.  But one case holding that acceptance is necessary seems to have been called to the court's attention, and the court states that it had no opportunity to examine that. The decision therefore is based entirely on the case of *U. S.* v. *Wright*, 1 McLean, 509.  And Justice Beatty concedes that the portion of the Wright case relied upon by him in his opinion was dictum.  Furthermore he does not even follow

this dictum, for Justice McLean in the Wright case stated that the resignation became effective when it was filed with the proper officer. The Wright case has since been discredited by the United States Supreme Court and expressly held to be contrary to the common law. (*Edwards* v. *U. S.*, 103 U. S. 471.)

III. The resignation was presented to the board of county commissioners as required by the statute. (Comp. Laws, 1815.) It was duly received, filed, acted upon, and accepted by the board. As the board had the power to appoint a successor to Murphy (Comp. Laws, 1830), it had the power to accept the resignation. (*Edwards* v. *U. S.*, 103 U. S. 471; *State* v. *Van Buskirk*, 56 Mo. 17.) It is not necessary to base our contention on acceptance, however. The resignation was accepted, and therefore our case comes within those authorities requiring acceptance as well as those which do not. If this court should determine that the Clarke case has settled the law in this state to the effect that an elective office may be surrendered without consent, Murphy's position would be no better than if acceptance were required. As has already been pointed out, the statute requires the resignation to be made to the commissioners. If acceptance is not required, this statutory provision makes the resignation complete when so presented. As to the general effect of statutes similar to ours, see *State* v. *Kitsap Co.*, 91 Pac. 4.

IV. Counsel have quoted section 1814 of Compiled Laws: "Any person who shall receive a commission or a certificate of his election or appointment shall be at liberty to resign such office, though he may not have entered upon the execution of his duties or taken the requisite oath of office." It is urged that this provision gives every officer the liberty to resign of his own free will whenever he pleases and without acceptance. It is probable that this provision was merely intended to do away with the common-law rule that an office could not be resigned in any manner until it was actually occupied. (*Miller* v. *Sacramento*, 25 Cal. 93.) But if we concede to this provision and to the others cited by counsel, the effect of freedom of resignation claimed in the concession hurts rather than helps their case. If Murphy could freely

and easily resign by consulting his own volition alone, it by no means follows that he can as freely withdraw his resignation when made. But this is the curious inconsistency into which counsel have forced themselves. The solemn manifestation or declaration of an official act cannot be withdrawn. When made it is final. An appointment when announced cannot be withdrawn. A resignation when solemnly presented and accepted, or when acceptance is not required, when placed in the hands of the person authorized to receive it, is equally final. Therefore, when Murphy placed his unconditional resignation in the hands of the board of commissioners he had done all that lay in his power to complete the resignation. If a resignation depends merely upon the will of the incumbent it would seem self-evident that the definite expression of that will should be final. Murphy so expressed himself. It cannot be true that thereafter he could reassume the office by the exercise of his will alone. And yet this is what he sought to do. For a good statement showing the finality of such an act of resignation, see *State v. Fitts*, 49 Ala. 402. The letter of February 3d amounted to a present surrender of the term of office beginning April 15th and could not be withdrawn. (*Whitney v. Van Buskirk*, 40 N. J. L. 463; *Bunting v. Willis*, 21 Am. Rep. 338; *Gatts v. Delaware Co.*, 12 Iowa, 405; *Leech v. State*, 78 Ind. 570; *State v. Van Buskirk*, 56 Mo. 17; *People v. Williams*, 145 Ill. 573; *Murray v. State*, 115 Tenn. 303.)

By the Court, SWEENEY, J.:

This is an original proceeding by the state, upon the relation of M. E. Ryan, against M. J. Murphy, respondent, to oust the latter from the office of sheriff of Lander County. The facts essential to a determination of the questions presented in this proceeding are as follows:

Respondent was elected sheriff of said county at the general election in November, 1906, and is still the duly elected, qualified, and acting sheriff, unless relator is entitled to such office by virtue of appointment by the board of county commissioners of Lander County on the 15th day of April, 1908, to fill a vacancy in said office claimed to exist on account of

the previous resignation of respondent. On the 3d day of February, 1908, respondent presented to the board of county commissioners his written resignation of the office of sheriff, to take effect April 15, 1908, which resignation reads as follows: "Office of M. J. Murphy, Sheriff, Lander County; Thos. White, Deputy. Austin, Nevada, Feb. 3, 1908. To the Honorable Board of County Commissioners of Lander County, State of Nevada—Gentlemen: I hereby tender my resignation of the office of sheriff of Lander County, State of Nevada, to take effect on the 15th day of April, A. D. 1908. M. J. Murphy." The resignation was received by the board of county commissioners on the day of its date, ordered spread upon the minutes, and filed. An order was duly entered in the minutes of the board accepting the resignation, to take effect April 15, 1908, which acceptance was also indorsed on the resignation and signed by the members of the board.

On the 29th day of February, 1908, respondent sent to the board of county commissioners the following communication: "Austin, Nevada, February 29, 1908. To the Honorable the Chairman and Board of County Commissioners of Lander County, Nevada—Gentlemen: I hereby withdraw my resignation as sheriff of Lander County, Nevada, tendered you on the 3d day of February, A. D. 1908, said resignation providing that the same take effect April 15, 1908, and I hereby further notify you that I shall continue to exercise the functions of the office of sheriff of Lander County until the expiration of my term, and I hereby request that you return to me my prospective resignation of date the 3d day of February, 1908. Very respectfully yours, M. J. Murphy, Sheriff of Lander County, Nevada." This communication was received by the board and ordered "filed and laid over."

On the 31st day of March, 1908, respondent filed with the commissioners an additional communication, the material portions of which reading as follows: "To the Honorable Board of County Commissioners of Lander County, State of Nevada—Gentlemen: On or about the 3d day of February, 1908, I sent to your honorable board a communication stating my intention of resigning the office of sheriff of Lander County on the 15th day of April, 1908. I have reconsidered

my action in that respect, and now notify you that I will not resign the office of sheriff of Lander County, State of Nevada, as I stated my intention to do in said communication, or at all, but intend to hold said office for my full term. * * * Yours respectfully, M. J. Murphy, Sheriff of Lander County, State of Nevada. Dated Austin, Lander County, State of Nevada, March 30, 1908." Thereafter on the 6th day of April, 1908, the board, being in regular session, upon motion denied the request of respondent to withdraw his resignation.

But one main question is presented in this proceeding: Did the respondent have the right to withdraw his resignation after it was filed with the board of county commissioners, and before the time specified in such resignation for it to become effective? Respective counsel have taken opposite views, both as to the proper answer to this question and as to the force of certain expressions found in previous opinions of this court bearing upon the question. In the case of *State ex rel. Nourse* v. *Clarke*, 3 Nev. 574, in the opinion by Beatty, C. J., the following expression occurs: "When a resignation is sent to take effect at a certain day, the case is different. Then there is no vacancy in the office until the day arrives, and if, in the meantime, the resignation is withdrawn, the party stands as if he had never written or sent his resignation." If this expression is the law, then unquestionably the relator has no claim to the office in dispute. We must concede, however, that the contention of relator's counsel is correct that the expression, in so far as the Clarke case is concerned, is dicta, as no such question was involved in that case.

Counsel for respondent contend that, whether dicta or not in the Clarke case, it is a correct statement of the law, and was approved and followed in the case of *State ex rel. Williams* v. *Beck*, 24 Nev. 92. In the latter case Beck, who was a commissioner of Washoe County, sent a letter to the governor requesting that he "hold the same," subject to the findings of a judicial investigation which he had requested, the letter further providing that "unless such investigation shall find me blameless, or in case such investigation shall not be held for a term of sixty days from the date hereof, then

and in either event you will consider this my final resignation and proceed under the law to appoint my successor. In the meantime I shall consider my duties as county commissioner suspended." This letter was endorsed by the governor: "Resignation accepted upon the conditions named therein." Before the expiration of sixty days, and without the happening of the conditions mentioned in the letter of Beck, he requested the governor to return what he styled his "conditional resignation."

In considering the Beck case, this court, by Massey, J., said: "The act of the governor, in accepting the resignation of the respondent and in refusing to return the same upon demand, is neither material nor important; for it has been settled by this court that a civil officer has the right to resign his office at his own pleasure and will, and the acceptance or rejection of such resignation can in no manner affect such right. (*State ex rel. Nourse* v. *Clarke,* 3 Nev. 566.) The resignation of respondent being conditional, and not to take effect except upon certain contingencies and at a future day, there was no vacancy in the office until the happening of the contingencies and until the arrival of such day. In the meantime the resignation was within the control of the respondent and could be withdrawn at his pleasure, and if such withdrawal was made by the respondent he stands as if he had never written nor sent said resignation. (*State ex rel. Nourse* v. *Clarke, supra.*) The question then is: Did respondent withdraw his resignation before the happening of the contingencies named therein and within sixty days from the date thereof? We think he did. The letter of resignation was written and transmitted on the 8th day of April, 1897. On the 26th day of May, 1897, before the sixty days elapsed, and before an investigation of the charges had been made by the grand jury, the respondent transmitted to the governor the letter in which he asked the return of the conditional resignation under date of April 8, 1897. This letter was an absolute withdrawal of such resignation. At the time the same was written, the resignation was subject to withdrawal and entirely within the control of the respondent."

A dissenting opinion was filed in the case by Bonnifield,

J., but it only went to the point that Beck's letter of May 26th was not "an absolute withdrawal of his resignation." The dissenting opinion concludes thus: ."In my view of the case, his resignation took effect on the 4th day of June, when the grand jury submitted their report to the court, and that at that time his right of withdrawal ceased." It is therefore clear that the full court recognized the right of Beck to withdraw his resignation within the sixty days and before the unfavorable happening of the contingency therein mentioned.

A distinction in principle is sought to be made between the Beck case and the one at bar, because the Beck case was a conditional as well as a prospective resignation, while respondent's resignation was prospective only; further, that in the Beck case the governor was to "hold" the resignation, "subject to the findings of a judicial investigation," and therefore it is claimed there was no delivery as a present resignation. There is nothing in the opinion, as we read it, wherein the court gave this latter proposition any consideration, even though we concede there may be possibly room for a distinction on that point, had it been considered. The court in the Beck case did not attempt to separate the conditional from the prospective feature of the resignation, and hold, because it was conditional, it could be withdrawn. The ruling of the court, as we view it, was as much to the effect that it could be withdrawn, because it was a prospective resignation, as it was that it was a conditional resignation.

It is very earnestly contended by counsel for relator that the dictum of the Clarke case is not the law, and that we should so now declare, regardless of the decision in the Beck case, which counsel claim can be distinguished. If the dictum in the Clarke case is clearly not the law, we might be disposed not to follow it in spite of the Beck case, the facts of which are different in some respects from this case, although, as we have before indicated, this court in the Beck case deemed the dictum of the Clarke case to be the law and applied it to the facts of that case. The cases are not numerous in this country where a question like that involved here has come before the courts for decision. By the great weight of authority, however, a prospective resig-

nation may be withdrawn before the time prescribed for it to take effect. In a number of cases, however, where the common-law rule is held to prevail, the right to withdraw after there has been an acceptance of the resignation has been denied.

"At common law the resignation of a public officer was not complete, so far as the public is concerned, until it was duly accepted by the proper authorities. And this rule prevails in many of the United States, though not in all, and, except where there is a statutory provision to the contrary, is supported by both the weight of reason and authority." (Mechem on Public Officers, 414.)

"In England a person elected to a municipal office was obliged to accept it and perform its duties, and be subjected himself to a penalty by refusal. An office was regarded as a burden which the appointee was bound, in the interest of the community and good government, to bear. And from this it followed, of course, that after an office was conferred and assumed it could not be laid down without the consent of the appointing power. * * * In this country, where offices of honor and emolument are commonly more eagerly sought after than shunned, a contrary doctrine with regard to such offices, and in some states with regard to offices in general, may have obtained; but we must assume that the common-law rule prevails unless the contrary be shown. In Michigan we do not find that any contrary rule has been adopted. On the contrary, the common-law rule seems to be confirmed by the statutes of the state, so far as their intent can be gathered from their specific provisions." (*Edwards* v. *U. S.*, 103 U. S. 471, 26 L. Ed. 314.)

This court has twice held that the acceptance or rejection of a resignation in no way affects the resignation. In the Beck case, *supra*, although there had been an acceptance of the resignation, the right to withdraw was recognized. While this court in its former opinions did not refer to the statute of this state, we think they are in consonance therewith.

Section 1814 of the Compiled Laws provides: "Any person who shall receive a commission, or a certificate of his election or appointment, shall be at liberty to resign such

office, though he may not have entered upon the execution of its duties or taken the requisite oath of office. * * *" Comp. Laws, 1815, provides that resignation of office shall be made by transmitting or delivering the resignation to certain prescribed officers or bodies. By section 1816 of the Compiled Laws it is provided, among other causes, that an office shall become vacant upon the resignation of the incumbent. These provisions of the statute, we think, give the privilege of resignation as an absolute right without any restrictions. It could hardly be said that one was "at liberty to resign," if such resignation, to be effective, was subject to the will of some other officer or body. The provisions in reference to resignations of members of the legislature, providing that they "shall deliver their resignations to the governor and he shall immediately order an election to fill such vacancy," show very clearly that such resignation in no way depends on its acceptance.

The Supreme Court of Missouri, considering a constitutional provision of that state, the language of which is not nearly as strong as our statutory provisions upon the question, said: "Whatever doubt may exist in some jurisdictions as to the right of a public officer to resign his office without the concurrence of the officer or body which has the power to act upon it, all doubt is removed in this state by a constitutional recognition of the right. The Constitution (section 5, art. 14, Ann. St. 1906, p. 313) declares: 'In the absence of any contrary provision, all officers now or hereafter elected or appointed, subject to right of resignation, shall hold office during their official terms, and until their successors shall be duly elected and qualified.'" (*State* v. *Bus*, 135 Mo. 325, 36 S. W. 636, 33 L. R. A. 616.) See, also, *Gilbert* v. *Luce*, 11 Barb. (N. Y.) 91.

It is clear that the common law, at least in so far as acceptance being necessary to constitute a valid resignation, does not prevail in this state. Even without these statutory provisions, we should hesitate to return to the common law, which it would seem was based to some extent at least, if not largely, upon the proposition that "to refuse to serve in a municipal office, when elected or appointed thereto, was a

punishable offense, of which numerous illustrations are to be found in the books." (*Coleman* v. *Sands*, 87 Va. 689, 693, 13 S. E. 148; Throop on Public Officers, 409.)

The case of *Rex* v. *Bower*, 1 B. & C. 585, for example, was a case where a person was compelled by *mandamus* to assume an office, even after he had paid a fine for refusing to fill it. The suggestion that a civil officer in this country may be compelled against his will to hold an office, and that he is liable commonly for refusal so to do, is not in accord with prevailing American ideas of liberty of action.

The cases that have applied the common-law rule in matters of resignation of office do not seem to have given any serious consideration to the difference in which an office is regarded under the common law and under the American theory of government. "At common law offices were incorporeal hereditaments, and one might have an estate in them, either to him and his heirs, or for life, or for a term of years, or during pleasure only. Offices of public trust, especially if they concerned the administration of justice, could not be granted for a term of years, nor could any judicial office be granted in reversion. The nature of offices of modern origin depends upon statutes creating them, and, in the absence of an express provision to that effect, no life estate or irrevocable tenure is conferred. * * * It is well settled in the United States that an office is not the property of the office holder, but is a public trust or agency; that it is not held by contract or grant; that the officer has no vested rights therein; and that, subject to constitutional restrictions, the office may be vacated or abolished, the duties thereof changed, and the term and compensation increased or diminished. The fact that a constitution may forbid the legislature to abolish a public office or diminish the salary thereof does not change the character of the office, nor make it property." (23 Am. & Eng. Ency. Law, 2d ed. p. 328.)

The whole theory of acceptance being necessary to constitute a valid resignation at common law was due to the fact that in England "a public office was regarded as a public burden, which it is the duty of every good citizen to bear for the public benefit, and which, if he refuses to serve, he may

be compelled to accept by *mandamus*, besides being subject to indictment, and, in the case of certain municipal offices, to a penalty. It necessarily results from this doctrine that a person who has once taken the burden of public office upon himself cannot lay it down at his own pleasure." (Throop on Public Officers, 409.)

One of the earliest and a leading case on the question of the right of withdrawal of a prospective resignation is that of *Biddle* v. *Willard, Governor*, 10 Ind. 62. The court in that case said: "To constitute a complete and operative resignation there must be an intention to relinquish a portion of the term of the office, accompanied by the act of relinquishment. Webster and Richardson define the words 'resign' and 'resignation' substantially thus: To resign is to give back, to give up, in a formal manner, an office; and resignation is the act of giving up. Bouvier says resignation is the act of an officer by which he declines his office, and renounces the further right to use it. (Acc. Wharton.) Hence, a prospective resignation may, in point of law, amount but to a notice of intention to resign at a future day, or a proposition to so resign; and for the reason that it is not accompanied by the giving up of the office, possession is still retained, and may not necessarily be surrendered till the expiration of the legal term of the office, because the officer may recall his resignation—may withdraw his proposition to resign. He certainly can do this at any time before it is accepted; and after it is accepted he may make the withdrawal by the consent of the authority accepting, where no new rights have intervened." A part of the above quotation forms a portion of the text of section 417 of Mechem on Public Officers, as also of section 415 of Throop on Public Officers. Throop, in section 415, says: "But where the resignation is prospective it may be withdrawn, at least with the consent of the appointing power, and according to some cases without such consent, unless some new rights have intervened, such as the appointment of a successor."

Counsel for petitioner earnestly contends for the correctness of the ruling of the Supreme Court of Tennessee in the recent decision of *Murray* v. *State*, 115 Tenn. 303, 89 S. W. 101. The

effect of that decision is concisely stated in the syllabus as follows: "The resignation of a public officer, when accepted by the proper authority, is irrevocable, and cannot be withdrawn, although an attempt to withdraw it is made before the arrival of the date at which the resignation, by its terms, is to take effect." In this case force and effect are given to the acceptance of the prospective resignation, and in this respect it may be distinguished from the case at bar. The court seems to have put the refusal to permit a withdrawal after the acceptance upon the grounds of public policy, and applies the same argument as in the case of *State* v. *Grace*, 113 Tenn. 9, 82 S. W. 485, which was a case of an unconditional resignation to take immediate effect. The court, referring to the latter case, say: "The same public policy which required the holding in that case dictates the application of the principle in the present. The resignation, with its acceptance, was no more absolute in that than in the case at bar. The mere fact that the one was to take effect immediately and the other at a date in the future we think of no import. In the one, as much as in the other, public interest requires that vacillation of purpose on the part of the person resigning should not be encouraged, and the discretion of the accepting tribunal, when once exercised, should not be reconsidered."

We are unable to see the force of the argument that the same question of public policy is involved in the withdrawal of a prospective resignation as would exist in the case of an immediate resignation. In the latter case a vacancy is at once created in the office resigned. In the former case there is no present surrender of the office. The public is only interested in having the office filled by some competent person. If before the vacancy actually exists, the officer, who has been duly elected or appointed, elects to rescind his prospective resignation, it is not clearly apparent where the public is liable to suffer any injury. A public officer should not be permitted to vacate an office, and then assume it again at will, and this he cannot do as a matter of law, independent of any question of public policy.

In the case of *Leech* v. *State*, 78 Ind. 570, cited by counsel

for relator, no question of the right of withdrawal of a prospective resignation was directly involved. The Leech case may profitably be read in connection with the case of *McGee* v. *State*, 103 Ind. 444, 3 N. E. 139. In the latter case McGee was the county superintendent of schools. On November 21, 1884, he tendered his resignation to take effect on the ensuing 26th of November. On the day last mentioned, upon a motion to accept his resignation the school board was equally divided, and the motion to accept was withdrawn. Upon that day, however, one Axtell was appointed to fill the unexpired term. Axtell qualified, but McGee refused to turn over to him the books of the office. *Mandamus* was instituted to compel him to surrender the records of the office. In his answer McGee set up the facts relative to the failure of the board to accept his resignation, and concluded the same by then attempting to withdraw his offer to resign. Considering the state of facts the court said: "The offer to the court to withdraw the resignation was ineffectual. The plaintiff's rights could not be defeated or in any wise affected in that manner. The time having arrived at which the resignation duly tendered was to take effect, no withdrawal having meanwhile occurred, and the school trustees having met and appointed a successor, no formal acceptance of the appellant's resignation was necessary."

We will not attempt to review all the authorities cited by respective counsel. It is enough, we think, to say that there is a great contrariety of opinion, both as to the effect of acceptance of a resignation and as to the limitations upon the right to withdraw a prospective resignation. A very careful examination of the whole subject-matter has failed to convince us that we ought to depart from the rule heretofore expressed by this court.

The demurrer to relator's petition is sustained. Respondent is entitled to his costs.

NORCROSS, J.: I concur.

TALBOT, C. J., dissenting:

May the resignation of a public office tendered to take effect in the future be withdrawn after it has been accepted

by the appointing power? The cases upon which respondent relies (*U. S.* v. *Wright*, 1 McLean, 509, Fed. Cas. No. 16,775; *State* v. *Boecker*, 56 Mo. 17; *People* v. *Porter*, 6 Cal. 28; *Nourse* v. *Clarke*, 3 Nev. 574; *Williams* v. *Beck*, 24 Nev. 98) do not support his contentions in the light of acknowledged legal principles. The facts in none of these are similar to those in the present proceeding, while in all the decisions found where the circumstances were the same as they are here, the courts have held that a resignation tendered to take effect at a future date cannot be withdrawn after it had been accepted. *United States* v. *Wright* did not relate to the withdrawal of a resignation, but to the liability of a surety on a collector's bond for delinquency committed by the collector after he had sent his resignation to the President, but before it was accepted. Hence there was neither an acceptance nor an attempt to withdraw the resignation, which are the two controlling ingredients in the proceeding now before this court. Justice McLean stated in that case: "There can be no doubt that a civil officer has the right to resign his office at pleasure, and it is not in the power of the executive to compel him to remain in office."

The following comment of the Supreme Court of New Jersey in *State* v. *Ferguson*, 31 N. J. Law, 107, upon this question, was quoted with approval by the Supreme Court of the United States in *Edwards* v. *U. S.*, 103 U. S. 477, 26 L. Ed. 314: "It is hardly to be supposed that it was the intention of the judge to apply this remark to the class of officers who are elected by the people, and whose services are absolutely necessary to carry on local government, or that it was the purpose to brush away with a breath the doctrine of the common law, deeply rooted in public policy upon the subject. However true the proposition may be as applied to the facts then before the circuit court, it is clearly inconsistent with all previous decisions, if extended over the class of officers where responsibility is the subject of consideration."

In *State* v. *Boecker*, *supra*, the clerk filed his resignation to take effect at a future date with the county court, instead of with the governor, who had the power of appointment. Before the day when the resignation was to take effect he

forwarded to the county court his written withdrawal, but in the meantime, and without his consent and against his express directions, the resignation had been forwarded to the governor, who at the time he received it, and before he accepted it, was informed of these facts, and appointed another person clerk. It was held that such resignation was not legal and complete, unless sent to the governor and accepted by him with the knowledge and consent of the officer resigning, and that the filing of the document with the county court was a nullity, giving that body no jurisdiction. If Murphy had drawn his resignation and lodged it with some other officer, who later, against his express will, had filed it with the board of county commissioners, and they had accepted it and appointed his successor, knowing that he objected to having it filed with them, the two cases would be analogous in principle. The holding there that the officer could withdraw the resignation filed against his wish by another with the governor is no authority for the respondent here to withdraw his resignation filed by himself voluntarily with the board of county commissioners.

In *People* v. *Porter*, 6 Cal. 28, which also was determined by a divided court, no question of the withdrawal of the resignation was presented, and the statement there in this regard is merely dictum. The same is true in *Nourse* v. *Clarke*, 3 Nev. 574, where there was neither an acceptance nor withdrawal of the resignation as here, and where the case turned upon the holding of the court that under our statute an immediate resignation took effect upon being forwarded to the appointing power, and before acceptance. The inadvertent remarks of Chief Justice Beatty not appertaining to any question in the case—"When a resignation is sent to take effect at a certain day, the case is different. Then there is no vacancy in the office until that day arrives, and, if in the meantime the resignation is withdrawn, the party stands as if he had never written or sent his resignation"—have been followed too far in *Williams* v. *Beck*, and in the present case, contrary to the various decisions involving any such issue, and the common law and our statute adopting it. He did not consider whether such a resignation could be withdrawn

after it had been accepted, or whether an acceptance would make the resignation binding is not stated. The Supreme Court of the United States considered and declined to follow the opinion in *Nourse* v. *Clarke* in a case under a Michigan statute which provided for the filing of resignations. (103 U. S. 477, 26 L. Ed. 314.)

*Williams* v. *Beck* is also readily distinguishable from the present proceeding, and it is unnecessary to consider whether, if the conditions were the same, that case ought to be held *res adjudicata* and conclusive. The resignation here was unconditional, and was to take effect on a specified day which was as sure to arrive as the earth to turn on its axis, and its meaning was clear. Beck's resignation was subject to two conditions, one that unless a judicial investigation found him blameless, and the other that unless such investigation was held within sixty days, the resignation should be final. If such investigation was held within that period and resulted in finding him blameless, his resignation was not to take effect. Within the specified term of sixty days the grand jury examined into the charges, and in their report to the district court expressed their belief that the board of county commissioners, including Beck, had acted in good faith and for the best interests of the people in taking action to prevent the spread of a dangerous disease, but commended the county auditor for refusing to draw his warrant for the amount of the claim, which had been allowed by the board for the expenses of fumigation and which had occasioned the criticism of Beck. There might be an inference that there was no statute authorizing the payment of the claim, but the investigation at least held Beck blameless of any wrong intentions. If the conditions which were to give the resignation effect did not fail entirely, they so nearly failed when the grand jury found that he acted only with good motives, and for the best interests of the county, that the equities were with Beck. One of the strongest reasons for holding that an unconditional resignation could not be withdrawn was lacking in that case, because the governor was not justified in taking action towards the selection or appointment of

a successor until the conditions arose which would make the resignation effective, and they might never arise.

Next to the adoption of the erroneous dictum in the Clarke case, which referred in no way to an acceptance, which controls here and which puts the resignation beyond withdrawal without consent, the greatest fallacy in the Beck case, not denied in respondent's brief, and in the opinion of the majority of the court now, is the mere assumption that, because the statute gives an officer the right to resign without the consent of the appointing power, as held in the Clarke case, he has the right to withdraw his resignation without consent after it has been accepted. It is illogical to conclude from the admitted premise that, because the statute has made the resignation of the officer effective and complete in itself upon execution and delivery, it is less conclusive and may more readily be withdrawn after it has been filed than at common law. The contrary conclusion, if any, could more readily be drawn. But it is not difficult to distinguish between the right to resign and the right to withdraw a resignation after it has been accepted, nor to see that our statute, which gives the right to resign, but does not give the right to withdraw a resignation nor mention such withdrawals, cannot properly be construed as giving the right of withdrawal, nor of changing the common-law rule that, after acceptance, a resignation cannot be withdrawn without the consent of the appointing power.

If there be any play upon words, the ones used, including "tender" and "to take effect" at a future day designated, and the resignation and conditions, were similar in *Whitney* v. *Van Buskirk*, 40 N. J. Law, 465. There the resignation read: "I respectfully tender my resignation of the office of chief of police of the City of Bayonne, to take effect upon the 1st day of January, 1878." This resignation was received and accepted by the mayor and the board of councilmen on the 4th of December. Later the chief of police insisted that this neither vacated the office then, nor ascertained the end of his term. The court held that a resignation to take effect at a future day named or accepted by competent authority was valid and

binding, and would take effect according to its terms. It was said in the opinion: "There can be no question of the right of such officer to tender a resignation of his office, and upon the acceptance of the tender his holding ceases. (Dil. on Mun. Corp. 163; _State_ v. _Newark_, 27 N. J. Law, 185; _State_ v. _Ferguson_, 31 N. J. Law, 107.) * * * And we are referred * * * to the case of _Biddle_ v. _Willard_, 10 Ind. 63. The only feature in that case bearing a resemblance to this is that the resignation of Judge Stuart was tendered to take effect on the 1st of January—a future day. The suit was for a _mandamus_ requiring the governor to issue a commission to the plaintiff, who had been chosen at the election occurring after the resignation was presented, and before the time when it was to take effect. It was held in construing statutes of the state regulating elections that there should be an existing vacancy at the time of election to validate it; and, further, that no such vacancy existed. For this latter ruling two reasons were given: One, that it did not appear that the governor had accepted the resignation; the other, 'that the vacancy did not occur by Judge Stuart's resignation until January following' the election, which was in October. It was rightly held that a resignation, to take effect at a future day, does not create a present vacancy. That is true whether it is accepted or not, but I am far from thinking that a prospective resignation, tendered and accepted, is without legal validity. Such a rule would be one of public inconvenience, and would be fruitful of no public good. It certainly is not asserted by the court in _Biddle_ v. _Willard_, but the propriety of such a practice is commended on grounds of public convenience. There may be such cogent reasons moving a public officer to withdraw from the duties of his office as will constrain the appointing power to accept his surrender of it. If it be to take effect immediately, it may work confusion and disorder in public affairs, such as would not arise if time were given for the selection of a proper successor, and for his fitting instruction in official duties. And we are referred to no case that questions the legality or propriety of such a practice. In my judgment this resignation was, on acceptance by the mayor and council, valid and effective

to terminate the relator's incumbency according to its terms."

In *Gates* v. *Delaware County*, 12 Iowa, 405, it was held that the tendering of a prospective resignation of a public office, and the filing of the same without objection by the officer authorized to receive it, was equivalent to an acceptance and operated to vacate the office resigned according to the tenor of such resignation. I am unable to see that the case of *Leech* v. *State*, 78 Ind. 570, wherein it was determined that when a city school trustee resigns his office, to take effect at a future day, the city council may fill the vacancy before the day fixed for the resignation to take effect, is in any way contradicted or modified by the case of *McGee* v. *State*, 103 Ind. 444, 3 N. E. 139, holding that the resignation could not be withdrawn after the time had arrived for it to take effect, and not holding that it could not have been withdrawn sooner, if it had been previously accepted. Also the case of *Murray* v. *State*, 115 Tenn. 303, 89 S. W. 101, and the part of the opinion quoted in the decision of this court, stands uncontradicted by any case where it was sought to withdraw an unconditional prospective resignation after it had been accepted.

In *Bunting* v. *Willis*, 27 Grat. (Va.) 144, 21 Am. Rep. 344, the court said: "That he had a right to resign his federal office, and that such right does not depend upon the consent or acceptance of the government or its agents, seems to be very well settled. That after such resignation becomes complete it cannot be withdrawn by the officer, even with the consent of the government, seems also to be settled, though he may receive a new appointment, which may perhaps be given to him in the form of a withdrawal by consent of his resignation of his former office. But a prospective resignation may be withdrawn at any time before it is accepted; and, after it is accepted, it may be withdrawn by the consent of the authority accepting, where no new rights have intervened. This was held by the Supreme Court of Indiana (*Biddle* v. *Willard*, 10 Ind. 62), and seems to be a reasonable principle. We have seen no case to the contrary, while there are other cases which tend to sustain it."

In *State* v. *Augustine*, 113 Mo. 24, 20 S. W. 651, 35 Am.

St. Rep. 696, the court quoted with approval: "It is well-established law that, in the absence of express statutory enactment, the authority to accept the resignation of a public officer rests with the power to appoint a successor to fill the vacancy. The right to accept a resignation is said to be incidental to the power of appointment. (1 Dillon on Municipal Corporations, 3d ed. sec. 224; Mechem on Public Officers, 413; *Van Orsdall* v. *Hazard*, 3 Hill, N. Y. 243; *State* v. *Boecker*, 56 Mo. 17.)"

I could readily concur in the statements in the opinion that an officer may resign under our statute without the consent of the appointing power, and that, in the absence of a withdrawal, a prospective resignation is conclusive after the time stated for it to take effect, if they were pertinent, or if any such questions were involved, but I especially dissent from the assertions that by the great weight of authority a prospective resignation may be withdrawn before the time prescribed for it to take effect, and that there is a great contrariety of opinion, both as to the effect of acceptance of a resignation and as to the limitations upon the right to withdraw a prospective resignation, if these are intended to apply seriously to a case where there has been an acceptance before the withdrawal of an unconditional resignation to take effect at a future date, as in the present one, because the cases relating to similar conditions uniformly hold that such a resignation cannot be withdrawn after it has been accepted without the consent of the appointing power. Without these decisions the case would still be conclusive in favor of the petitioner, because it is not disputed that at common law a resignation cannot be withdrawn after acceptance without the consent of the appointing power, and the common law including this rule is adopted in this state by express legislative enactment. In the Clarke and Beck cases and in the present one this court seemed to be unaware of or to ignore the fact that under the common law as in force in this state, and under the different decisions elsewhere, it is too late to withdraw the resignation after it has been accepted. The acceptance controls, and makes the resig-

nation conclusive, so it cannot be withdrawn without the consent of the appointing power.

The argument that it is better to allow the officer who has been elected to withdraw his resignation, and permit him to hold the office instead of an appointee, is contrary not only to the common law and decisions, but would apply as well to immediate resignations or others after the time for them to take effect had arrived. As this court has already proceeded too far on the wrong road in following the statements of Chief Justice Beatty made forty years ago in a case in which they were not pertinent, and which did not relate to an acceptance, which was not considered by him, and at a period when the authorities were not so accessible, it is time to call a halt. I am unable to agree with the conclusion of my esteemed associates, because it has no support except in dicta and the fallacies indicated, and is opposed by the unanimous opinions of the various judges in all these cases, where the courts had for determination a similar question, or one as to whether an unconditional resignation of a public office, which by its terms was to take effect at a future day, could be withdrawn after it had been accepted without the consent of the appointing power, and because it is contrary to the common law, to the best public policy, and to the usages and practices most convenient and fair of giving reasonable notice of resignations of persons in public office and private employment. It is better to hold the one resigning to the plain terms of his resignation after it has been accepted and met by the mind of the appointing power, whether the governor or the county commissioners, than to promulgate a rule which will enable persons of vacillating dispositions to trifle with these officials in regard to their acceptance of resignations and appointment of successors, or which does not give notice and reasonable time for these purposes.

The decision is also contrary to the opinion of the Supreme Court of the United States in *Edwards* v. *U. S.*, *supra*, and to *People* v. *Williams*, 145 Ill. 577, 33 N. E. 849, 24 L. R. A. 492, 36 Am. St. Rep. 514, holding that the common law in regard

to resignations is in full force even in the absence of a statute making it so, and as to the withdrawal of resignations, is in effect a judicial repeal of our statute, which provides that the common law, when not in conflict with the State or Federal Constitution, shall be the rule of decision in all the courts of this state, and is equivalent to the enactment of a provision that resignations may be withdrawn after their acceptance contrary to the common law and the decisions.

After the acceptance of the resignation, the board of county commissioners properly appointed relator, Ryan, to the office of sheriff in advance for the part of the term remaining after the time, which by its language, as apparent to all who read, it was to take effect, and he ought to be awarded the office accordingly.

As the statute which gives the respondent the right to resign imposes no condition or limitation, there is no reason why he could not make his resignation to take effect to-morrow or at some future date, as conclusive after acceptance as if it had been immediate, nor why a successor appointed in advance is not entitled to the office for the remaining part of the term analogously to officers elected in advance in the fall who are installed at the beginning of the following year.